

# IN THE UNITED STATES DISTRICT COURT

# DISTRICT OF RHODE ISLAND

Natalie Gill Bartlett

    Plaintiff

CASE NUMBER:

v.

American Power Conversion Corporation

    Defendant

**COMPLAINT**
plaintiff requests jury trial

## JURISDICTION

This action is brought pursuant to Title VII of the Civil Rights Act of 1964 as amended, for Employment Discrimination and the Age Discrimination in Employment Act. Jurisdiction is conferred by 42 U.S.C. 2000e-5 and 29 U.S.C. 626 (c) (1).

## PARTIES

1. Plaintiff:    Natalie Gill Bartlett
    45 Lakeside Drive
    Narragansett, RI 02882

2. Defendant    American Power Conversion Corporation
    132 Fairgrounds Road
    West Kingston, RI 02892



## NATURE OF CASE

1. The plaintiff was employed by the defendant at its corporate headquarters, at 132 Fairgrounds Road, West Kingston, RI 02892.

2. The alleged discriminatory acts occurred during March, April and May of 2004.

3. Plaintiff filed charges against the defendant with the U.S. Equal Employment Opportunity Commission on August 20, 2004 charging the defendant with discrimination for age, a hostile and offensive work environment and retaliation which plaintiff charges resulted in wrongful termination of her employment on May 10, 2004.

4. The Equal Employment Opportunity Commission sent the Notice Of Suit Rights attached as exhibit # 1 received by the plaintiff on December 1, 2004.

5. The discriminatory acts that are the basis of this suit are:

    a. Wrongful termination of plaintiff's employment
    b. Age discrimination
    c. Existence of a hostile work environment
    d. Retaliation for whistleblowing
    e. Defamation of plaintiff's character, libel and slander

## CAUSE OF ACTION

1. Plaintiff alleges that the defendant discriminated against her and that the following facts serve as the basis for the charges of discrimination.

    a. (1) Count I: Wrongful termination of plaintiff's employment May 10, 2004 representing discriminatory treatment inconsistent with employer's personnel policy, and including preferential treatment provided other department employees known to have caused workplace problems.

    (2) Supporting Facts: Defendant terminated plaintiff's employment without providing the plaintiff any entitlements provided by the companies personnel policy for hourly employees as was provided several other employees within the plaintiff's work department.

    Rhode Island Department of Labor and Training letter of June 17, 2004 attached as exhibit # 2 states that plaintiff was discharged due to poor performance. Plaintiff disputes this characterization provable from employer's internal records that her 2003 full year accounts receivable collection results were 155% better than the composite of other department employees with similar sized work assignments.

In the November 2, 2004 letter to the Equal Employment Opportunity Commission on page one, American Power Conversion outside legal counsel, states that plaintiff was selected for termination because of her inappropriate conduct and disruptive presence in the workplace. Copy attached as exhibit # 3. On page 4 of this letter, attached as exhibit # 4 counsel states that defendant was forced to eliminate one collections representative position which is a misrepresentation since a collector to replace the plaintiff was hired within thirty days of plaintiff's employment termination and two additional collectors were added within 90 days of plaintiff's termination.

b. (1) Count II: Age discrimination

(2) Supporting Facts: Age of plaintiff at time of employment termination was sixty three. The employee hired to replace plaintiff was more than thirty years younger.

c. (1) Count III: Existence of a hostile work environment

(2) Supporting Facts: Specific incidents supporting plaintiff's allegations are documented in her March 22, 2004 memorandum to her supervisor Penny Edwards which includes documentation of threatening comments by Penny Edwards supervisor, Brian Kelly. To plaintiff's knowledge none of the situations mentioned received any type of formal disciplinary action, one dismissed as humorous, several without any type of formal investigation which also supports favoritism and preferential treatment of certain department employees.

Plaintiff and other employees were required to work in a department that can accurately be classified as dysfunctional which should not be required of them.

Plaintiff was characterized by management as causing problems with other department co-workers which is a misrepresentation. Plaintiffs criticism and improperly characterized actions were directed at her manager, Penny Edwards, who was not involved in problematic work situations by choice, and frequently exhibited favoritism for certain employees. A good example of this lack of involvement is a copy of Karena Burnham's email at the time of her resignation. Karena is a young single mother who felt compelled to resign due to poor treatment by a department employee while Penny Edwards took no action to resolve the situation. A copy of this email is attached as exhibit # 5.

        The plaintiff's collection results were exceptional compared to other department members with similar assignments which can be substantiated by department accounts receivable collection results.

d. (1) Count IV: Plaintiff retaliated against for whistleblowing

   (2) Supporting Facts: Plaintiff's employment was terminated primarily as a function of conflict with her supervisor, Penny Edwards. Plaintiff challenged Penny's departments hostile and discriminatory work environment including such items as lack of timely processing of customer payments which was a key item effecting collector's results.

   Plaintiff reported several incidents of sexual improprieties, employee favoritism and employee dishonesty and violation of company code of ethics and policies in her March 22, 2004 memorandum to Penny Edwards regarding these improprieties and violations. No specific action was taken by Penny Edwards regarding these complaints and they were not formally answered or refuted which supports their existence. One incident of sexual impropriety by a department member was characterized by company management as humorous. Plaintiff believes that her complaints to Penny Edwards were key factors in the termination of her employment, which constitutes retaliation and and served as management motivation to fabricate several incidents that contributed to defamation of plaintiffs personal character.

e. (1) Count V: Defamation of plaintiff's character, libelous and slanderous accusations.

   (2) Supportive Facts: Unproven statements and malicious intent of certain employees of plaintiffs former work department as described in handgun search incident discussed in April 28, 2004 memorandum from plaintiff to Brian Gough, copy attached as exhibit # 6.

   In addition unproven, malicious attacks directed at plaintiff depicted in in November 2, 2004 letter to the Equal Employment Opportunity Commission on page three falsely accusing her of the following behavior, "complainant frequently touted her connection to the Rhode Island "mob" by claiming that she could pick up the phone and have certain situations "taken care of." "She also boasted that she had access to guns and knives". A copy of page three of this letter is attached as as exhibit # 7.

   Plaintiff believes that the situations mentioned in point # 2 are not only examples of malicious defamation of character but also of blatant dishonesty exhibited by certain employees of her former work

department and serve as a good example of the type of extremes that management fabricated to justify the alleged wrongful termination of the plaintiff's employment.

### INJURY TO PLAINTIFF

1. Plaintiff believes that unproven accusations made regarding her job performance, her challenge of management and employee practices within her work department resulted in defamatory untrue statements regarding her flawless character, and retaliation for her challenge of certain defendant company management and their defamatory, threatening and improper handling of her situation in violation of her civil rights and entitlements under American Power Conversion personal policy for hourly employees. Plaintiff's believes that her actions in this situation motivated retaliation against her by management that resulted in wrongful termination of her employment.

2. Plaintiff had planned to work until age 65 and should not have been subjected to prejudicial discriminatory treatment in this situation, which resulted in significant financial damage to her and significant mental anguish due to the untrue defamatory accusations made against her personal character.

### REQUEST FOR RELIEF

1. Plaintiff requests consideration of monetary relief in this complaint in excess of seventy five thousand dollars.

The undersigned declares under penalty of perjury that she is the plaintiff in the foregoing complaint and that the information provided is true and correct.

_FEBRUARY 23, 2005_
Date

_Natalie Gail Bartlett_
Signature of Plaintiff

_45 Lakeside Drive_
Address of Plaintiff

_Narragansett,  RI   02882_
City            State       Zip Code

_(401) 782-1398_
Telephone Number

Summary Schedule of Attached Exhibits to Natalie Bartlett Complaint    2/23/2005

**Exhibit # 1** - copy of EEOC Notice of Suit Rights dated November 29, 2004

Exhibit # 2 - copy of Rhode Island Department of Labor and Training letter of June 17, 2004 stating plaintiff's discharge due to poor performance

Exhibit # 3 - copy of page 1 of American Power Conversion outside legal counsel of November 2, 2004 citing reason for plaintiff's employment termination

Exhibit # 4 - copy of page 4 of American Power Conversion outside legal counsel of November 2, 2004 citing reason for elimination of plaintiffs job

Exhibit # 5 - copy of Karena Burnham's email dated September 3, 2003 regarding nature of the plaintiff's work environment

Exhibit # 6 - copy of plaintiff's April 28, 2004 memorandum to Brian Gough challenging the manner in which the refuted handgun in handbag incident was handled by the American Power Conversion director of human relations

Exhibit # 7 - copy of page 3 of American Power Conversion outside legal counsel of November 2, 2004 citing defamatory unproven comments regarding the plaintiff's character

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Natalie Bartlett<br>45 Lakeside Drive<br>Narragansett, RI 02882 | From: | Boston Area Office<br>John F. Kennedy Fed Bldg<br>Government Ctr, Room 475<br>Boston, MA 02203 |
|---|---|---|---|

[ ] *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR § 1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 161-2004-00518 | Rance A. O'Quinn, Enforcement Supervisor | (617) 565-3192 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans with Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge.

[ ] Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

[ ] While reasonable efforts were made to locate you, we were not able to do so.

[ ] You were given 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged.

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this Notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

[signature]

Robert L. Sanders,
Area Office Director

NOV 29 2004

(Date Mailed)

Enclosure(s)

cc: AMERICAN POWER CONVERSION CORPORATION
c/o Brian Pezza, Esquire
Testa, Hurwitz & Thibeault
125 High Street
Boston, MA 02110-2704

EXHIBIT # 1



STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

# Department of Labor and Training

Central Adjudication Unit, P.O. Box 20067, Cranston, RI 02920-0941
Tel: (401) 462-8300  FAX: (401) 462-8318  TDD: (401) 462-8304

NATALIE G BARTLETT
45 LAKESIDE DRIVE

NARRAGANSETT RI 02882 1010

SSN: ▓▓▓▓▓▓▓
Mailing Date: June 17, 2004
U.C.R.C./APC AMERICA INC.
No. 04-11205

X   You were discharged because of poor performance.

The issue is whether or not you were discharged under disqualifying circumstances under Section 28-44-18 of the Rhode Island Employment Security Act.

You were discharged for non-disqualifying reasons since there is no evidence of misconduct in connection with your work. You are allowed benefits if you are otherwise eligible.

This decision is in accordance with Section 28-44-18.

*Carol A. Gibson*
_____
Authorized Representative of the Director

If you disagree with this determination, you must file a written appeal within 15 calendar days of the mailing date indicated on this decision or it WILL BECOME FINAL. You may file an appeal either by Mail or by Fax. Please indicate your name, social security number, current address, telephone number and reason(s) you wish to appeal in your correspondence. Mail your appeal request to Central Adjudication Unit, P.O. Box 20067, Cranston, RI 02920-0941 FAX#: 401-462-8318. Once your appeal is received, you will receive further instructions by mail. Further information regarding the appeals process is contained in your copy of Unemployment Insurance: Your Benefit Rights.

EXHIBIT # 2

# TESTA, HURWITZ & THIBEAULT, LLP

ATTORNEYS AT LAW

125 HIGH STREET
BOSTON, MASSACHUSETTS 02110-2704

OFFICE (617) 248-7000
Direct Dial (617) 310-8449
Fax Extension (617) 790-0505

FAX (617) 248-7100
E-Mail pezza@tht.com

November 2, 2004

**VIA FACSIMILE and OVERNIGHT MAIL**

Rance O'Quinn
Enforcement Supervisor
Equal Employment Opportunity
 Commission
Boston Area Office
John F. Kennedy Federal Building
Government Center, Room 475
Boston, MA 02108

RE:  Natalie Bartlett v. American Power Conversion Corporation –
     EEOC Charge No. 161-2004-00518

Dear Supervisor O'Quinn:

This letter sets forth the initial position statement of Respondent American Power Conversion Corporation ("APC") with respect to Complainant Natalie Bartlett's Charge of Discrimination. Respondent reserves the right to supplement this position statement in the future.

In her Charge, Complainant alleges that APC discriminated against her because of her age and retaliated against her for certain allegations she levied against a co-worker. As set forth in more detail below, APC categorically denies these allegations. Complainant was selected for termination because of her inappropriate conduct and disruptive presence in the workplace.

## I.   Background

Complainant held the position of Collections Representative in APC's Accounts Receivable Department from April 29, 2002 until May 10, 2004. Accounts Receivable is a small department, consisting of approximately nine employees and one supervisor in APC's West Kingston, Rhode Island plant. Collections Representatives are responsible for working with APC customers to ensure timely payment for APC's products.

Complainant had a strong personality and was often critical of her co-workers and superiors. On March 22, 2004, Complainant's supervisor, Penny Edwards, sent her an e-mail indicating that it was time to conduct Complainant's annual evaluation. Complainant's response is illustrative of her combative approach, stating: "Thanks but I would rather have a

*EXHIBIT # 3*

**TESTA, HURWITZ & THIBEAULT, LLP**

Rance O'Quinn, Enforcement Supervisor
November 2, 2004
Page 4

Ms. Edwards reported the threat to Human Resources representative Emily Mohrfeld. Ms. Mohrfeld called Complainant into her office to try to calm her down and to investigate Ms. Edwards' report of a threat. Complainant again acknowledged that APC had an obligation to investigate, but also alleged that Ms. Edwards and a co-worker Complainant referred to as Ms. Edwards' "girlfriend" were conspiring against her. Complainant was dismissive of Ms. Mohrfeld's efforts, repeatedly referring to her as "just a young girl," even after Ms. Mohrfeld objected. After it became clear that the meeting was not going to be productive and that Complainant was determined to be inflammatory, Ms. Mohrfeld sent Complainant home for the rest of the day.

Around the same time, APC was planning to restructure the Accounts Receivable Department into two separate units to increase efficiency in collections. Due to these new efficiencies, APC was forced to eliminate one Collections Representative position. APC selected Complainant because of her improper behavior in the workplace and because Ms. Edwards felt that she did not work well with her colleagues – leaving some feeling threatened and unsafe – and therefore was a disruption to the Department's business. As a result, Complainant's employment was terminated on May 10, 2004.

## II. Argument

### A. Complainant's Allegations Of Age Discrimination Are Wholly Without Merit

Other than the fact that Complainant was over 40 years of age at the time of her termination, she has alleged no facts to support her claim of age discrimination. Instead, the circumstances indicate that age was not a factor in her termination or at any time during her employment. Ms. Edwards hired Complainant in 2002 when Complainant was 61 years old and was still her supervisor at the time of her termination. To find for the Complainant, the Commission would have to believe that Ms. Edwards, who is herself 54 years old, was free of age bias when she hired Complainant and suddenly turned against older workers just two years later. On the contrary, Federal law establishes a presumption of nondiscrimination when an employee is hired and fired by the same individual within a relatively short timespan. See, e.g., Chiaramonte v. Fashion Bed Group, Inc., 129 F.3d 301 (7thCir. 1997); Grossman v. Dillard Dept. Stores, Inc., 109 F.3d 457 (8th Cir. 1997). It is also significant that, at the time of her termination, the median age of employees in the Accounts Receivable department was nearly 52 years old. Clearly, the Accounts Receivable Department had a significant percentage of older workers and Complainant's age was not a factor in her termination.

### B. APC Did Not Retaliate Against Complainant

APC does not dispute that Complainant felt that her March 2004 evaluation did not accurately reflect her work performance. Complainant's overreaction to this perceived slight, however, contributed greatly to her termination. In several meetings with APC officials and in lengthy and incendiary memoranda, Complainant pointedly attacked her supervisor, maligned the performance and behavior of her co-workers and criticized APC's management and business

*EXHIBIT # 4*

**Karena Burnham**
09/05/2003 09:26 AM

To: Elaine Brand/CORP/NAM/APCC@APCC, Lucinda Zeman/CORP/NAM/APCC@APCC, Penny Edwards/MAG/NAM/APCC@apcc
cc: George Sirrine/MAG/NAM/APCC@APCC, Mary Silvia/MAG/NAM/APCC@APCC, Malinda Gullifa/CORP/NAM/APCC@APCC, Paula Willis/CORP/NAM/APCC@APCC, Natalie Bartlett/MAG/NAM/APCC@APCC, Dorothy McAleer/CORP/NAM/APCC@APCC, Fran Wilcox/MAG/NAM/APCC@APCC, Deb Vanderveer/MAG/NAM/APCC@APCC
Subject:

All,

I have come to a conclusion that I no longer would like to be a temporary employee. For the time I have been here at APC, I would have thought that my efforts and improvements would have gotten me at least and offer to be hired. I have proven myself and my skills to everyone time after time and yet, still no offer. I have a living to earn as does everyone else. I thank APC and its employees for giving me the experience that I needed to get offers from other companies. I have found a job that is willing to pay me a hourly rate worth working for and also full benefits. I am always willing to work hard for my employer as long as they are willing to work for or with me. I came into this office with some expectations. I am leaving with even more. I expect some people to learn that being childish, rude and inconsiderate does not get them anywhere nor does it get them anything. That has only proven to drive people away, Deb. I am not happy that some people in my office went out of their way to trash me. I am not happy that those same people are more than twice my age yet could not act in the appropriate professional manner in the office. I would hate to see what they live like out side of work. They must be very lonely people. I do apologize to my APC manager for leaving on such short and inappropriate notice. This is highly unprofessional of me.

**Prostaff:** This is my official good bye.
Please remember that when you hire someone for a position you should research the duties of the position before you tell that future employee of yours. I have done so much more than what you hired me to do. Also, make sure that you give them a fair warning that some people up here are as polite as your selves. Due to one single member of this office I am leaving. I am giving up. I am giving her the satisfaction of the winning. I am tired of hearing the scowls, the remarks, and seeing the grotesck physical faces being made behind my back as well as the childish rumors. We all know who she is. This same person has been known to mislead people to get the enjoyment or satisfaction of causing arguments and tension in this office. I apologize that I can no longer put up with her. I was not made aware of the disturbance she would cause and has obviously caused before.

On another note...APC and Prostaff had reprimanded me for personal phone calls??? Please check the phone logs of Fran Wilcox and Deb Vanderveer. I can guarantee you first hand that not only do they call their family or boyfriend on a daily basis but they call for wedding apparel and arrangements and also doctors appointments, bill reconciliation and to reprimand their boyfriend. Also, they call people outside of this office but with in APC to give them an "AP update" Dare I mention your name Deb??? Also, the internet use...shoping for curtains, wedding apparel, zippo lighters, shoes, places to honeymoon??? That's right... What a terrible person I was for mentioning that we should all be on the phone more often.

Thank you George for training me on how to work here at APC and helping us all for our piddly problems that could only have taken a little more thought on our parts to solve before having to harrass you for answers. You are a wonderful teacher and truely a wonderful person.

Mary, thank you for always being stern and making sure I learned what ever you were teaching me. Thank you for putting up with me!!! Thank you for being so generous to all of us and opening your mind and heart to each person.

EXHIBIT # 5

Dorothy, thank you for showing me how to be determined.

Natalie, thank you for always making sure we all laughed and looked on the bright side.

Thank you Penny for being so understanding, and thank you for teaching me how to think quick...even though I haven't quite grassped that thinking thing yet.

Thank you Malinda for being a good friend, I will see you later!!! Keep your head up and if that same someone gives you problems...just make sure you make either Prostaff or Penny aware of what is going on. Nothing is too petty of a problem for them to hear!

Thank you all for teaching me the do s and don't s of AR. And thank you Deb for being the person you are that you ruined every day here at APC for me that I just wanted to leave becuase you surrounded my name in such slander. Good Job, you've won!!! Maybe you should tell the truth about everything you have done. Maybe you should come clean with everyone. Maybe you should tell Cheryl Green what kind of person you thought of her before you had to sit next to her. Maybe you should tell her your exact words that you used at lunch. Maybe you should tell Natalie what you thought or still think of her??? Maybe you should tell George what type of personality you analyzed him to have??? Maybe you should tell Fran what you thought of her when she wasn't around to hear you. Maybe you should tell Penny what kind of manager you thought she is??? Maybe you should come clean and tell the truth to Mary about what you said about her and what you think of her. Maybe you should stop going to the OE side and talking about all of us. Please for your sake and others LEAVE ALL OF YOUR ISSUES WITH BOB AT HOME !!!

See one of the biggest differences between you and me...I am loud, I say what I think out loud. I do not trash people behind their backs. You have only ruined your own concious and self esteem by crossing slander with everyones name. You have only hurt yourself and gave me a reason to laugh.

I WOULD RATHER WORK AT McDONALDS THAN TO COME HERE AND LISTEN TO YOU AGAIN, DEB!!!

Karena

EXHIBIT #5
PAGE 2

TO: Mr. Brian Gough, Director Human Resources, American Power Conversion    April 28, 2004

FROM: Natalie Bartett

Subject: Meeting In Your Office Today Regarding Allegation of My Carrying a Gun in my Handbag

The subject of this meeting today in your office represents another example of unfounded character assailment that I have been unfairly subjected to at APC during the past 40 days. My memorandum to Penny Edwards of March 22, 2004 details the improper threatening of my employment at APC by the actions of Penny Edwards and Brian Kelly, which I believe had the objective of terminating my employment at APC.

The personal humiliation resulting from the unfounded speculation today regarding my carrying of a gun was unnecessary and represents a situation that defames and puts my personal character at issue. I and my husband of 34 years have never owned or had in our possession a hand gun.

I understand your comments that when situations such as the alleged incident are reported, that it is your responsibility to investigate. However, I disagree with the manner in which the situation has been handled. Since the alleged situation was reported by someone within my Department, did someone say that they had seen me carrying a hand gun or was it simply a situation that it was speculated that I had a hand gun in my hand bag? If this was a speculation I believe that it is more appropriate to conduct detailed questioning of the reporting individual(s), than to have me searched by an APC security employee.

From my perspective this is simply another situation that Penny Edwards hopes will result in the termination of my employment because I took issue with her regarding the March 22nd meeting with Penny and Brian Kelly and also resulting from my March 28th rebuttal to her regarding my 2003 annual performance appraisal requested by you.

I have enough pressure on me daily handling approximately 190 accounts requiring accounts receivable collection activities without occurrences such as this and those discussed in my memorandum of March 22nd.

The management practices that exist and have existed within our Department have been totally out of control during my two and one half years at APC. It is unbelievable the type of behavior of employees that has been sanctioned by management during this period. A non-threatening employee audit by your Department of the management practices that exist will identify numerous items that result in high pressure jobs within a dysfunctional Department.

In summary my personal character or integrity has never been questioned and I have been cited in performance appraisals as a positive example relative to job leadership for others within the Department. My collection results have consistently been comparatively superior to all others within the Department with similar size account collection responsibility and I do not deserve to be singled out for the type of treatment that I have been afforded just because I have challenged my manager. In conclusion I believe that with several of the proper type questions of the individual(s) involved in disparaging me that this situation will be proven to be totally unfounded and I am requesting that a more detailed investigation be conducted into this matter after what happened to me today. I would appreciate being advised of the outcome of a proper investigation since the accusations made against me are a very serious matter.

Copy: Ms. Sue Sutherland, Mr. Jeffrey Giguere

Sincerely,

Natalie Bartett

EXHIBIT # 6

**TESTA, HURWITZ & THIBEAULT, LLP**

Rance O'Quinn, Enforcement Supervisor
November 2, 2004
Page 3

her to discuss the allegation. Tellingly, Complainant expressed little interest in talking about the lunchroom incident with Mr. Kelly and instead wanted to focus on the performance appraisal. Complainant criticized the accuracy of the "meets expectations" appraisal and wanted to review the rankings with Mr. Kelly. Complainant grew annoyed at Mr. Kelly's attempts to focus her on the alleged lunchroom incident. She told Mr. Kelly that "the situation in question is not sexual harassment." Instead, according to Complainant, she raised the issue because she believed Ms. Darcy's behavior over the prior two and one-half years was inconsistent with APC's values (in other words, she wanted to blame Ms. Darcy for any friction in the department). Nevertheless, Mr. Kelly elevated the lunchroom issue to APC's Human Resources Department, which then conducted an investigation into the conduct and addressed the issue with Ms. Darcy directly.[1]

In the weeks that followed, Complainant continued to cause problems within the department. Complainant frequently touted her connection to the Rhode Island "mob" by claiming that she could pick up the phone and have certain situations "taken care of." She also boasted that she had access to guns and knives.[2]

Complainant left her co-workers so ill at ease that one even reported a fear that Complainant may actually have kept a gun in her purse. APC could not ignore a report that an employee may have been bringing a gun to work and felt it had a duty to investigate this allegation. Thus, on April 28 – more than a month after Complainant's performance review – Human Resources Director Gough discreetly called Complainant to a meeting with one of APC's security personnel. After learning of the allegation against her, Complainant agreed that it was responsible of APC to investigate and consented to a brief search of her handbag, limited to ensuring that it contained no weapons. When the search yielded nothing, Complainant was excused without any adverse consequences.

Like with her performance evaluation, Complainant's subsequent response to this incident was far more severe than the inconvenience, albeit an unusual one, warranted. After her meeting with Mr. Gough, Complainant went to Supervisor Edwards' office and demanded to know whether she had been the one to report the alleged handgun comment. Ms. Edwards replied that she had not. In a loud and angry voice, Complainant claimed that someone was going to pay. When Ms. Edwards asked if Complainant was threatening her, Complainant replied, "Yes."

---

[1] APC's Human Resources Director, Brian Gough, met with Complainant on March 24. Once again, Complainant was bent on focusing on her dissatisfaction with the performance appraisal. Mr. Gough encouraged Complainant to formally respond to her evaluation, but cautioned her that Ms. Edwards' evaluation was her professional opinion and would stand. He explained that her complaints about Ms. Edwards and Ms. Darcy sounded more like personality conflicts and not like prohibited discrimination. Complainant agreed that discrimination was not an issue.

[2] Another example of Complainant's interpersonal relations issues is her workplace comment that she hoped terrorists would hijack an airline flight frequented by a co-worker.

EXHIBIT # 7