**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **Natalie Gill Bartlett** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | |
| v. | : | **CASE: CA 05 084 ML** |
| | : | |
| | : | |
| **American Power Conversion Corporation** | : | |
| **Defendant** | : | |

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rules of Civil Procedure 56, Natalie G. Bartlett, pro se plaintiff moves for summary judgment in this action.

## PLAINTIFF'S MEMORANDUM OF LAW

Under provision's of rule 12 the plaintiff contends that the filing of a Motion for Summary Judgement is appropriate due to the defendant's failure to respond in a cooperative and good faith manner to certain important points of the defendant's discovery request, the majority of which were identified in the plaintiff's December 27, 2005 letter to defendant counsel. ( copy provided to the Court in plaintiff's December 27, 2005 memorandum in support of objection to defendant's Motion to Dismiss).

Natalie Gill Bartlett
v.
American Power Conversion Corporation
C.A. No. CA 05-084ML



## PLAINTIFF'S STATEMENT OF MATERIAL FACTS

1. Plaintiff's employment was wrongfully terminated due to the plaintiff's complaint regarding the unwelcome, sexually improper behavior of Cheryl Darcy and the fact that defendant management was challenged and upset by the content of four letters written by the plaintiff during March and April, 2004 , when it was apparent to the plaintiff that the defendant was moving forward to terminate her employment.

2. That a conspiracy and collaborative effort existed among certain defendant employees to discredit the plaintiff and to defame her by creating a number of statements attributed to the plaintiff during March, April and May of 2004. (included as exhibit 1 are pages provided by the defendant during discovery marked items no. 43, 44, 45, 46, 48, 52 and 53 that allege certain statement's made by the plaintiff that disparage her personal character). It is interesting that the related actions of Cheryl Darcy only commenced after the plaintiff had complained to Penny Edwards regarding her lack of timely processing of customer receivable payments and the reporting of the condom thrown in front of Fran Wilcox in the lunchroom.

a. The alleged plaintiff comments which the plaintiff contends are not true, contained in the copies included as exhibit 1 provided during discovery were either made or acknowledged by Cheryl Darcy, Dorothy McAleer and to a lesser extent by by George Sirrine, all employees of the plaintiff's former work department.

b. During discovery the defendant defined all material requested that was directly related to the alleged situations and employees making the statements contained in exhibit 1 as either privileged data or information protected under Rule 36. The plaintiff claims that since these employees initiated or carried forward the gun in handbag allegation and others such as Rhode Island mob connection, can have things taken care of statement, plaintiff owns guns and knives, plaintiff is not stable, why can't you find a terrorist when you need one to bring done an airliner and the question asked by defendant counsel in her deposition, is it true that you showed your black laced panties to George Sirrine?, are presented as the type of things that were the foundation for the justification of the defendant to terminate the employment of the plaintiff. No other specific data, just generalities was provided during discovery.

c. The plaintiff contends that the alleged derogatory statements are attributed to Darcy, McAleer and Sirrine and support the plaintiff's contention that the personal data requested of each in discovery should not be protected or classified as privileged or work product since the statements and other inference attributed to each occurred several months prior to the plaintiff's EEOC case filing and her Federal Court Civil Complaint filing.

d. In addition in discovery Penny Edwards characterized the plaintiff as an average performer, performance wise. The plaintiff considers this fact as a further attempt to discredit the plaintiff for the purpose of building a case to justify

termination of the plaintiff's employment. The facts are that the discovery material provided by the defendant show that the plaintiff's accounts receivable collection results for 2003 were 155% better than the composite results of several other collectors with similar sized account collections responsibility (150 to 190 assigned accounts).

e. Plaintiff numerous times during her employment mentioned to George Sirrine, the sexually improper, unwelcome comments, frequently made, sometimes daily by Cheryl Darcy that contributed to the existence of a hostile work environment. Sirrine mentioned several times to the plaintiff that nothing could be done about Darcy's behavior, inferring existence of "employee protected status" for her.

f. It is a well known fact of present and former employees of Cheryl Darcy's work department that Cheryl was involved in the Sirrine tuna fish sandwich smashing in the face incident discussed later, the plaintiff's discovery requests regarding any disciplinary action afforded Cheryl was refused as protected data by the defendant. Since it is apparent that Cheryl Darcy was a primary contributor of the alleged situations attributed to the plaintiff that disparage the plaintiff and attack her character why should any type of data related to her character be immune from discovery?

g. Plaintiff in discovery requested personnel file data for Sirrine and Darcy and average morning clock-in time data for McAleer for the years 2002 and 2003 that the defendant considers privileged or protected from disclosure under Rule 36. Since the primary reason for termination of the plaintiff's employment as stated by the defendant was the problems that she caused with other employees within her work group and since the employees cited in this section are the ones making statements against the plaintiff that appear to represent the primary support for the termination decision, the plaintiff believes that access to certain data in their files should not be denied.

Cheryl Darcy in her statements contained in exhibit 1 appears to be the originator and carrier of the gun in handbag accusation. Plaintiff believes that Darcy has received some type of immunity or protected status from application of any type of disciplinary action due to the well known and witnessed incident where George Sirrine smashed a tuna fish sandwich in her face. The plaintiff's reporting to management of the throwing of the condom incident where Darcy tossed one in front of Fran Wilcox during lunch is further evidence of her "protected status" for which she was not disciplined.

The plaintiff further believes that Darcy is the primary initiator of the defamatory and slanderous allegations against the plaintiff in response to the plaintiff's complaining about her lack of timely processing of customer payments. The plaintiff believes that Cheryl resented this and the fact that she had learned that the plaintiff was the person complaining to management regarding the lunchroom condom incident.

h. The plaintiff believes George Sirrine is provided "protected status" of some type due to the well known incident where he smashed a tuna fish sandwich in the face of Cheryl Darcy and threw a punch at the face of Sharon Bleisel. George's statement that he believes "that she is not stable" (reference to the plaintiff) in his May 6, 2004 statement marked by the defendant as item 053 included in exhibit 1, is somewhat ironic and further evidence of character assailment. In addition during the plaintiff's November 22nd and 23rd deposition the question was asked the plaintiff, "did you show your black laced panties to George Sirrine"? Again another example of how preposterous the defendant's attack on the plaintiff has evolved. The plaintiff wears a Depends type product daily and has for at least twenty years due to physical damage resulting from the birth of two approximate ten pound children thirty one and thirty four years ago.

i. Defendant's failure to provide the average clock-in time each morning for Dorothy McAleer for the 2002 and 2003, another important item refused as protected

in discovery. The plaintiff believes that factually Dorothy McAleer was in collaboration with Cheryl Darcy in the creation of alleged statements attributed to the plaintiff. During her deposition the plaintiff admitted that she does not respect Dorothy due to her questionable integrity. It is a well known fact by present and former employees of Dorothy's department that Dorothy clocks-in each morning, goes to the cafeteria, orders her breakfast and returns to her desk, eats her breakfast while watching the news over the internet, in essence a company paid breakfast costing the defendant several thousand dollars during the term of Dorothy's employment, in essence theft. Dorothy also daily abuses the smoking break policy of two allowed often taking as many as one per hour, another abuse of defendant resources amounting to thousands of dollars of lost time annually. Dorothy is afforded favoritism by her manager which is resented and discriminatory to other employees of her department contributing to the hostile and dysfunctional environment that exists.

j. Another situation contributing to the defendant's hostile, threatening and sexually improper work environment in which the plaintiff worked is the case of Bo Lipsey. Bo Lipsey came to work daily most of the time in an inebriated state reeking of alcohol. This condition existed for approximately eighteen months before any action was taken on him. His emotional behavior at times was a concern to several employees who voiced their concern to George Sirrine regarding his

condition, one mentioning that she was fearful of working around him in his condition.

3. In the defendant's initial response to the plaintiff's first request for production of documents, the defendant provided a chart stamped as item 003 included as exhibit 2 outlining the defendant's Corrective Discipline procedure. The plaintiff was never personally or in writing counseled by her manager regarding any of the specific items contained in the defendant's EEOC charges response and additionally never counseled regarding any of the defendant employee statements included in exhibit 1 copies alleged to have been made by the plaintiff during March, April and May of 2004.

a. In plaintiff's first request for production of documents and in plaintiff's letter dated March 22, 2004 to Penny Edwards, the plaintiff requested to receive a copy of the defendant's Corporate Personnel Policy related to disciplinary action for employees. This item was requested again in plaintiff's letter to defendant's legal counsel of October 25, 2005. The plaintiff contends as fact that she believes that provision of this data has been purposely avoided due to certain other employees protection against their improper actions while the plaintiff was subjected to discriminatory and prejudicial actions (termination of employment) that would not have occurred if the Corporate Personnel Policy for employee disciplinary action had been properly followed.

The defendant during March of 2004 and twice during discovery has refused to provide the plaintiff a copy of this policy.

b. How in a period of less than two months can a collector with superior comparative collection results be justifiably terminated while previously being regarded as a department leader, setting a good example for other department collectors in difficult and stressful work? During discovery the defendant confirmed that nothing derogatory regarding the plaintiff existed in her personnel file at the time of employment termination. This entire situation supports existence of retaliation for challenging defendant management and criticism of Cheryl Darcy's work habits and sexually improper and unwelcome behavior in the workplace.

c. When considering the Corrective Discipline exhibit how can an employee with excellent comparative performance, not missing one day of work in over two years, cited as a positive example of leadership for other department collectors be guilty of causing such severe problems with other department members without being provided the entitlements of verbal warning, written warning, performance corrective action plan, a letter in personnel file and probation? Plaintiff believes defendant's action against her to be prejudicial and discriminatory when compared to several other department employee precedents established by Penny Edwards. Since plaintiff's situation has transpired to where it is clearly beyond the employment at will characterization, companies such as the defendant are believed by the plaintiff

to be bound by prior precedents that they have established with other employees in order not to be guilty of discriminatory treatment.

c. Plaintiff believes that her not being afforded any consideration for application of the steps outlined in the defendant's Corrective Discipline procedure and procedures for application of disciplinary action that may be included in the defendant's Corporate Personnel Policies that they have refused to provide are clearly discriminatory actions against her. This is particularly relevant in her case when the termination of her employment appears to be primarily based upon the statements of Cheryl Darcy, Dorothy McAleer and George Sirrine and some undefined non-specific actions of the plaintiff not yet defined by defendant management. These facts plus the challenge of defendant management in plaintiff letters written to management during March and April of 2004 that were never answered by defendant management. These letters were written to defendant management once it was apparent to the plaintiff by defendant management adversary manner that they were moving forward to terminate the plaintiff's employment and her challenge of management which are employee's rights are believed by the plaintiff to have provoked retaliation actions against her by the defendant management involved.

4. Previously cited in the plaintiff's objection to the defendant's Motion to Dismiss, the defendant did not follow Rhode Island Federal District Court

Rules in not providing detailed explanation for items objected to in the discovery process. The plaintiff abided by this procedure by providing a separate listing of supplemental details for the objection for each situation.

5. In defendant's December 22, 2005 response to the plaintiff's November 25, 2005 letter requesting additional discovery information, defendant counsel stated that the defendant's supplemental answers to the interrogatories requested would be sent shortly. To date this data has not been received.

6. Throughout discovery plaintiff contends that the defendant consistently has made vague, general, non-specific responses for fulfillment of certain plaintiff discovery requests as stated in the plaintiff's objection to defendant's Motion to Dismiss. Plaintiff contends that comparatively to the defendant's responses, plaintiff's represented a higher quality, more comprehensive, good faith, cooperative effort without trying to avoid the submission of any requested data without detailed explanation.

7. Plaintiff contends that age discrimination is still a valid factor in this complaint due to the fact that upon termination she was immediately replaced by an employee at least thirty years younger. This portion of plaintiff's complaint still deserves consideration due to the stated reasons of the defendant at the time of termination that they were reorganizing the plaintiff's former department and due to this they were forced to eliminate one employee. The plaintiff was selected due to the alleged problems with others that the plaintiff is accused of causing.

8. Plaintiff contends that when certain data requested during discovery, committed, but not yet provided, when received will factually support the Title VII provision, that treating people in similar jobs differently is discriminatory.

**PLAINTIFF'S REQUESTED RELIEF**

Plaintiff requests that Summary Judgment be granted against the defendant. Plaintiff requests the Courts consideration of the granting to the plaintiff the equivalent of one year's annual salary comparable to her last annual salary at the defendant and the consideration for a reasonable additional financial award for the defamatory statements of defendant employees that maliciously maligned her personal character causing the plaintiff needless stress, anxiety and embarrassment through the despicable allegations that have been made and continue to be made against her after the termination of her employment. The plaintiff contends that the defamatory statements of defendant employees that continue to surface after the termination of the plaintiff's employment are unconscionable and pose significant questions regarding the integrity of the American Power Conversion Corporation in their handling of this complaint.

Natalie Gill Bartlett pro se plaintiff

45 Lakeside Drive
Narragansett, RI 02882
(401) 782-1398

Date: January 13, 2006

**CERTIFICATION**

Gardner H. Palmer,Jr.
RODIO & BROWN, LTD.
91 Friendship Street
Providence, RI 02903

I hereby certify that I sent a copy of the within document to the party listed above by regular, first class mail, postage prepaid on the 13th day of January, 2006

Natalie G. Bartlett pro se plaintiff