# EXHIBIT 1

Contains copies of documents provided the plaintiff by the defendant in the defendant's counsel letter to the plaintiff of December 22, 2005 and referenced in page no. 2 as point no. 2 as the plaintiff's Statement of Material Facts.

Meeting

Attendance: Cheryl Darcy, Penny Edwards, and Emily Mohrfeld

March 31, 2004

Emily introduced her role in HR as supporting the administration team. Emily told Cheryl that she asked Penny to sit in.

Emily asked Cheryl if there was an incident between Cheryl and Fran Wilcox where a condom was thrown down in front of Fran from Cheryl. Cheryl said yes, the incident did occur but it was between her and Fran who are friends outside of APC and it was done in a joking/kidding manner. Emily told Cheryl that she understood that and while it may have been in good humor or fun between her and Fran, it was not acceptable behavior in the work environment. Emily explained to Cheryl that we are at a workplace and the action was inappropriate and not acceptable. Obviously it had offended someone for me to be aware of the situation. Emily explained to Cheryl that she did not want this to be demotivating factor but to please refrain from actions such as these in the future. Emily stated that Cheryl is doing a good job and to please keep up the good work.

Emily then asked if Cheryl had any questions or comments. Cheryl stated that she would like it to be noted that the incident took place around 6 months ago and has only recently been brought to attention, this factor seemed "fishy" to Cheryl. Emily explained to Cheryl that she was not sure why the incident was brought forward when it was but that the situation did need to be addressed. Cheryl also wanted it noted that the person addressing this incident has a personal vendetta against Cheryl and Fran and has nothing to do with the condom issue. Cheryl has also replied to Emily and Penny in an email about the conversation. (See attached)

The conversation resulted in Emily stating that these types of actions are not appropriate and to please refrain from them in the future. Cheryl said she understood and would refrain. Emily thanked Cheryl for stopping in and please let her know if she had any more questions or problems.



**Cheryl Darcy**
03/31/2004 09:53 AM

To: Emily Mohrfeld/CORP/NAM/APCC@APCC
cc: Penny Edwards/MAG/NAM/APCC@apcc
Subject: recent meeting

Upon reflection of the content of our meeting a moment ago, I would also like it noted that during the alleged "offensive conversation" all the people at the table, at that time, laughed (including Fran) and took the incident in the humor that it was intended. From what I understand, (if the complainant is who I believe it is) one of those people is now unhappy with several department members and has decided to use every possible petty incident for revenge. She has also accused people of "making faces" at her, of myself not giving her accounts appropriate and equal attention. She has also made "offensive comments" (asking Fran what she did to gain gifts from her new boyfriend) These comments and others were so offensive to Fran that she was reduced to tears. In as much as you are correct in saying that perhaps my joke with Fran should have been conducted outside of business hours (even though our lunch period is our own time that we are not on the company clock for) it seems that it was brought forward now, 6 months later, for totally different and non-related reasons. That no one seemed offended at the time, but had to think about it for 6 months in order to realize that she may have been offended? I feel that it needs to be noted that it is very difficult to have a co-worker that you are afraid to look at, or speak to, or give a correction to for fear of retaliation. (so much so , that many of us avoid conversation or contact with completely, unless absolutely necessary for business reasons as she had made clear in the past that she has access to guns and knives) If the complainant is not who I suspect, then I am worng about the sense of humor and type of friendship I thought I had with the others at the table who I also socialize with outside of work. However I would like my comments regarding the actions of the other person to stand and be noted. If you need me to state a name, I will. This is the type of person we need to be concerned with. People who are bitter and unhappy with their surroundings often turn to violence.
Thank you for your time in reading this.
http://www.apc.com

ORIGINALS FOR
EXHIBIT COPIES
4 SETS

044

**Emily Mohrfeld**

04/01/2004 09:13 AM

To: Cheryl Darcy/MAG/NAM/APCC@apcc
cc: Penny Edwards/MAG/NAM/APCC@APCC
Subject: Re: recent meeting

Cheryl -

Thank you for your comments and I appreciate your concern. Your comments have been noted. If you feel a legitimate fear please feel free to step forward with your concerns.

Thank you

emily

Emily Mohrfeld
Human Resource Specialist
401-789-5735 ext 2405

Cheryl Darcy



**Cheryl Darcy**

03/31/2004 09:53 AM

To: Emily Mohrfeld/CORP/NAM/APCC@APCC
cc: Penny Edwards/MAG/NAM/APCC@apcc
Subject: recent meeting

Upon reflection of the content of our meeting a moment ago, I would also like it noted that during the alleged "offensive conversation" all the people at the table, at that time, laughed (including Fran) and took the incident in the humor that it was intended. From what I understand, (if the complainant is who I believe it is) one of those people is now unhappy with several department members and has decided to use every possible petty incident for revenge. She has also accused people of "making faces" at her, of myself not giving her accounts appropriate and equal attention. She has also made "offensive comments" (asking Fran what she did to gain gifts from her new boyfriend) These comments and others were so offensive to Fran that she was reduced to tears. In as much as you are correct in saying that perhaps my joke with Fran should have been conducted outside of business hours (even though our lunch period is our own time that we are not on the company clock for) it seems that it was brought forward now, 6 months later, for totally different and non-related reasons. That no one seemed offended at the time, but had to think about it for 6 months in order to realize that she may have been offended? I feel that it needs to be noted that it is very difficult to have a co-worker that you are afraid to look at, or speak to, or give a correction to for fear of retaliation. (so much so , that many of us avoid conversation or contact with completely, unless absolutely necessary for business reasons, as she had made clear in the past that she has access to guns and knives) If the complainant is not who I suspect, then I am worng about the sense of humor and type of friendship I thought I had with the others at the table who I also socialize with outside of work. However I would like my comments regarding the actions of the other person to stand and be noted. If you need me to state a name, I will. This is the type of person we need to be concerned with. People who are bitter and unhappy with their surroundings often turn to violence.

Thank you for your time in reading this.
http://www.apc.com



**Cheryl Darcy**
04/01/2004 03:10 PM

To: Emily Mohrfeld/CORP/NAM/APCC@APCC
cc:
Subject: our meeting and subsequent memo

I cannot say that I am really in fear for my life regarding this person, but I know that several co-workers were witness to her telling another person that she carries a pistol in her purse. I do not know if it was true or "just talk", I never saw it and therefore cannot accuse, but there is one department member who has told her husband that if anything ever happens to her to look toward this person as suspicious. This may sound very melodramatic, but you never know what goes on in people's heads when they are upset and unhappy. We never really considered it a threat until we have become aware that this person seems to be unhappy in general and also with several co-workers lately. She has also bragged to several people that she has connections with "the mob" and has a person who will do her bidding if she asks. I don't want to create a problem where there may not be one (and I certainly don't want her to get any more upset with me or anyone else than she already is). I would prefer that this person's issues with us would just be put to rest and stop resorting to childish tatteling, but in case it ever escalates, at least someone is aware. You read in the news so many times of people in the workplace just snapping and you never know which person it will be. I assume that this will be kept confidential, as I wish to have no repercussions from this person . Meanwhile, even though you have not mentioned a name of the complainant, I am keeping a business only rapport with the person I believe it to be and am very carefull to have pleasant manner.

http://www.apc.com

**Penny Edwards**

04/28/2004 03:04 PM

To: Brian Gough/MAG/NAM/APCC@APCC
cc: Sue Sutherland/CORP/NAM/APCC@APCC, Emily Mohrfeld/CORP/NAM/APCC@APCC
Subject: Fw: Natalie

Brian,

I agree this will definitely add to the tension, I am available anytime on Thursday or Friday. Thanks.
----- Forwarded by Penny Edwards/MAG/NAM/APCC on 04/28/2004 03:03 PM -----

**Brian Gough**

04/28/2004 02:36 PM

To: Penny Edwards/MAG/NAM/APCC@apcc, Sue Sutherland/CORP/NAM/APCC@APCC
cc: Emily Mohrfeld/CORP/NAM/APCC@APCC
Subject: Natalie

Lou and I met with Natalie today and informed her that we had received a complaint from someone indicating that Natalie was overheard commenting that she keeps a gun in her handbag.

Natalie was extremely upset, and claims this is turning into harassment - which she will discuss with her attorney. I have indicated to her that if she does discuss with her attorney, and any communication was to come from him/her, then it should be done through our legal counsel - Jeff Giguere.

She did agree that it was the responsible thing for us to do to question her and request she show Lou Clark the contents of her handbag. She still was not happy about it.

Lou went to the general area of her work cubicle - and waited out in the hallway while Natalie went into her workstation and came out to show him her bag. (This was done to prevent any claim of defamation of character). Lou has confirmed that no weapons were found in the bag.

Natalie has said that she did not make the statement, that she does not keep a gun in her handbag, does not own a gun, does not have a gun permit.

I believe this incident will result in a further escalation of the tension in that department. We need to address immediately. I would recommend we all meet sometime on Thursday or Friday of this week to formulate a communication and action plan.

Brian Gough
Director of Human Resources - NAM/LAM

http://www.apc.com

May 5, 2004

Conversation with Dorothy McAleer and Emily Mohrfeld

Dorothy stopped by Emily's office to discuss with her some concerns she has felt lately. Dorothy explained to Emily that she wanted to discuss how she has been feeling concerning Natalie Barlett. Dorothy explained that Natalie has made comments about Natalie's connection to the mob and that she knew people that could make someone disappear. Dorothy felt that although this comments were made to a group that included Dorothy, she feels that Natalie was directing this comments at her specifically.

Dorothy told her husband, kids, and family that if something should happen to her that they should look at Natalie at APC.

Dorothy also noted that George Sirrine and her were talking and George told Dorothy that he had heard Natalie make the comment that, Natalie wish she knew a terrorist that would blow up the plane that Dorothy takes to and from Florida. (Dorothy explained to me that her husband lives in Florida for the winter because of health reasons and she travels down to see him often during the winter).

Dorothy said that she can heard Natalie on the phone all day. Dorothy states that Natalie makes more personal phone calls during the day then business calls. She feels we should check Natalie's phone records.

Dorothy stated that her husband needs to have heart surgery and that he has been putting it off because of this situation with Natalie.

Dorothy explained to me that she comes in at different times and leaves at different times everyday and takes different routes home because she does not feel safe. She said that she changes her schedule daily because she does not feel comfortable or safe. Dorothy feels that this is not right or normal.

She feels threatened by Natalie. Dorothy stated that Natalie sits behind her on a daily bases and she does not feel comfortable or safe. Dorothy feels threatened by Natalie behind her and is fearful that she will soon begin to make mistakes because of the threat.

Dorothy would like to know what her options are and how she should handle this situation. She would like to know what protects her.

May 6, 2004

Conversation with George Sirrine, Brian Gough, and Emily Mohrfeld

Emily asked George to come down to her office. Brian asked George if he had ever heard comments made by Natalie Bartlett. George explained that she has made some crazy comments in the past about connections she may have, certain individuals she knows, and activities she entertains.

George did confirm the fact that Natalie did state that she did want to know which plane Dorothy McAleer flies to and from Florida on and to have terrorists attack it. George also told Brian and Emily that Natalie encouraged another employee, Cheryl Greene, to call the IRS on Dorothy concerning her registration and vehicle plates in Florida.

George stated that he barely speaks with her and when he does it is civil and they talk about her dog. George does believe that Natalie does have some issues and that she is not stable.

George did comment that the department is tense and that something needs to change and he is excited for the change in structure that Sue Sutherland presented.