SCANNED

**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **Natalie Gill Bartlett** | : | |
| **Plaintiff** | : | |
| v. | : | **CASE: CA 05 084 ML** |
| **American Power Conversion Corporation** | : | |
| **Defendant** | : | |

**PLAINTIFF'S RESPONSE TO DEFENDANT AMERICAN POWER CONVERSION CORPORATION'S MOTION FOR SUMMARY JUDGMENT**

**Plaintiff's Purpose for Filing**

The plaintiff's response is filed under Federal Rule of Procedure 56 and in accordance with provisions of Rule 12 to object to all claims made under the Defendant's Statement of Undisputed Facts in support of the defendant's Motion for Summary Judgment.

**1. Defendant's Argument Against Plaintiff's Claim of Wrongful Termination**

A. Defendant's Argument - Mrs. Bartlett was an at-will employee and she or APC could end the employment at any time with or without cause.

**Plaintiff's Response**

1.a. - Defendant technically disqualified themselves from at-will provisions when they retaliated against the plaintiff's claims and challenges of management in

letters she wrote to APC management during March and April, 2004 and the ensuing slanderous and defamatory statements reflective of the plaintiff's character initiated by Cheryl Darcy and made by Cheryl Darcy, Dorothy McAleer and George Sirrine. The plaintiff believes these three (3) employees to be in collaboration with Penny Edwards to build a case to justify termination of the plaintiff's employment. The plaintiff contends that her employment was terminated primarily as a result of the fictional statements regarding the plaintiff created primarily by Cheryl Darcy as the initiator during April and May, 2004 brought forward to management making the termination decision by Penny Edwards. Nothing existed of a derogatory nature regarding the plaintiff or her performance prior to April, 2004 which the defendant has verified.

1.b. The plaintiff's claim of wrongful termination is believed to be the result of her overall contentions made of all of her other primary claims against the defendant and that the defendant should not be awarded Summary Judgment against the plaintiff.

1.c. The plaintiff contends that the defendant on the basis of precedence is bound by its past practices regarding how they handled other present and former employees of APC in regard to employee disciplinary actions taken. The factual existence of this contention the plaintiff believes will be confirmed at the time that the defendant is ordered by the Court to provide plaintiff requested information in the

files of present and past employees known by the plaintiff and other present and former employees that has been requested and refused to provide three (3) to this point during discovery. The plaintiff further believes that when provided the requested information will factually support the Title VII provision, that treating people in similar jobs differently is discriminatory.

1.d. In addition the plaintiff contends that the alleged slanderous and defamatory statements attributed to the plaintiff provided to defendant management motivated them to make their termination decision based upon the efforts of Cheryl Darcy and her collaboration with Penny Edwards who brought the information forward to APC management. The plaintiff contends that the lies created and brought forward by Cheryl Darcy are provable in Court testimony of certain present and former employees of the defendant.

**2. Defendant's Argument Against Plaintiff's Hostile Work Environment Claim**

**Plaintiff's Response**

1.a. - The defendant numerous times in their defense stated that the plaintiff did not claim sexual or any type of personal harassment prior to her termination.

---

U.S. District Court New York, NY, Leibovitz v. New York City Transit Authority 95-CV-3860 (ed NY 1988) stated, "personal harassment is not necessary for a hostile work environment claim".

1.b. In defendant's Motion for Summary Judgment, the defendant confirmed, 1) the Cheryl Darcy/Fran Wilcox incident, 2) confirmed the Cheryl Darcy/George Sirrine tuna fish sandwich smashing in the face and punch throwing incident, 3) that Beau Emory Lifsey was allowed to work for approximately eighteen (18) months in an inebriated state most days, (has not been confirmed by management but is well known and complained about by employees as fact), 4) that Cheryl Darcy joked that another APC employee get her management position by performing oral sex for management of her department (not yet confirmed by defendant but heard by more than one (1) present and former employees of Penny Edward's department), 5) that the plaintiff complained to George Sirrine numerous times regarding Cheryl Darcy's sexually improper behavior, to which Sirrine replied, hundreds of complaints have been made against Cheryl over the years and **nothing can be done.** (plaintiff has pursued this type and other disciplinary action related information regarding Cheryl during discovery which the defendant has refused to provide), 6) Karena Burnham's email to plaintiff's department members of September 5, 2003 which is another example of the hostile, out of control, dysfunctional work environment that existed, 7) Cheryl Darcy's comment during lunch hour that the cream sauce on Fran Wilcox's meat entree reminded her of sperm. This comment was witnessed by several present and former employees and it typical of Darcy's often daily affinity for making improper, sexually improper, unwelcome comment to other employees, 8) in addition the plaintiff in her January 24, 2006 letter to defendant counsel, Gardner Palmer added two additional situations that support the plaintiff's contention regarding a

hostile work environment existence:

Situation No. 1

The plaintiff recently learned of a situation that occurred during 2003 prior to Karena Burnhams leaving APC. Karena reported to human resources that Deborah Robars tried to hit Karena with her car in the employee parking lot. Karena viewed that videotape that confirmed this incident and said that she did not believe that any disciplinary action was taken regarding this situation. This is another example of the hostilities existing within the dysfunction, unmanaged work department of the plaintiff. The plaintiff plans to request a copy of this tape as evidence later in the proceedings.

Situation No. 2

While Beau Lifsey was employed, Penny Edwards assigned him the responsibility of handing out weekly pay checks to department members. Several months before Lifsey left APC, one payday he handed Dorothy McAleer her check, and Dorothy went into an emotional tirade stating that "the drunk" opened my pay check. Dorothy disrupted the workplace for the remainder of the day and part of the next day continuing to refer to Beau as a drunk saying that her privacy had been intruded and Beau had seen her personal information. Penny Edwards was not able to control Dorothy who reported the incident to human resources. This is another example of the out of control, dysfunctional workplace that existed during the plaintiff's employment.

1.c. - Penny Edwards statement on page 18 of the defendant's January 19, 2006 Supplementary Response to the First Set of Interrogatories of the Plaintiff stating, that before the plaintiff's March 22, 2004 performance appraisal, Dorothy McAleer, Cherl Darcy, Paula Willis, Deb Robars and Karena Burnham complained to Penny about the plaintiff's unpleasant attitude and condescending comments. The plaintiff contends that it is highly unlikely that five employees would come to Penny regarding such an item in the time frame mentioned unless Penny requested the input. This statement also loses it credibility because Karena Burnham had left APC more than six (6) months prior to the alleged occurrence.

**3. Defendant's Argument Against Plaintiff's Claim of Defamation, Libel and Slander**

**Plaintiff's Response**

1. The defendant lists approximately twenty five (25) statements alleged to have been made by the plaintiff reported to APC management in the various motions and letters written by the defendant in this case.

1.a. statements made by outside counsel, Testa, Hurwitz et al in their November 2, 2004 initial position statement to the EEOC, on page 3, "complainant frequently touted her connection to the Rhode Island "mob" by claiming that she could pick up the phone and have certain situations, "taken care of". she also boasted that she had access to guns and knives, she made workplace comments that she hoped

a terrorist would hijack an airline flight frequented by a co-worker ( this statement by outside counsel disputes the authenticity of department employee statements alleging the plaintiff to have made statements similar to she would like to find a terrorist to take down an airliner)

1.b. - The April 1, 2004 Cheryl Darcy email to Emily Mohrfeld stating that the plaintiff had made it clear in the past that she had access to guns and knives.

1.c.- The April 1, 2004 Cheryl Darcy email to Emily Mohrfeld that several co-workers were witness to her telling another person that she carries a pistol in her purse, she has also bragged to several people that she has connections with "the mob" and has a person who will do her bidding if she asks.

1.d. - The May 5, 2004 Dorothy McAleer and Emily Mohrfeld conversation memo. Dorothy explained that Natalie has made comments about Natalie's connection to the mob and that she knew people that could make someone disappear. Dorothy said that George Sirrine said that he had heard Natalie make the comment that, Natalie wish she knew a terrorist that would blow up the plane that Dorothy takes to and from Florida. (appears to be a significant misrepresentation when compared to the Testa Hurwitz statement noted in point 1.a.).

1.e. - During an April 6, 2004 conversation of George Sirrine with Brian Gough and Emily Mohrfeld, George did confirm the fact that Natalie did state that she did want to know which plane Dorothy McAleer flies to and from Florida on and to have terrorists attack it. ( another distortion compared to the 1.a. statement of

outside counsel).

1.f. - In the defendant's response to the firs set of interrogatories of the plaintiff dated October 20, 2005 on page 13, Ms. Bartlett's alleged statement, why can't you find a terrorist when you need one to bring down an airliner? (again another statement of doubtful truth compared to the outside counsel statement in 1.a.).

1.g. - In response No.7 on page 17 of the defendant October 20, 2005 response to the first set of interrogatories of the plaintiff, this alleged inference occurred on about March 24, 2004. During this period of plaintiff's co-workers reported to human resources that the plaintiff frequently spoke of having access to guns and knives, she also reported that plaintiff had been heard to tell others that she carried a gun in her purse.

1.h. - No. 10a.1 on page 21 of the defendant's October 20, 2004 response to the first set of interrogatories of the plaintiff, Cheryl Darcy reported to defendant on or about April 1, 2004 that several co-workers were witness to the plaintiff telling another person that she carries a pistol in her purse. In addition in point 10a.3. of this document Cheryl Darcy reported to the defendant on or about April 1, 2004 the plaintiff bragged to several people that she had connections to the mob and that she has a person who will do her bidding. On or about May 5, 2004, Dorothy McAleer reported that the plaintiff made similar comments and George Sirrine stated on or about May 6, 2004 the plaintiff made comments about "connections" she has.

1.i. - On or about March 31, 2004 Cheryl Darcy reported to defendant that

plaintiff claimed to have access to guns and knives.

1.j. - On page 24 noted as response No. 13 of the October 20, 2004 defendant response to plaintiff's first request for interrogatory response, stated in early April, 2004 Cheryl Darcy informed the human resources department that several co-workers had overheard Ms. Bartlett indicate that she kept a pistol in her purse.

1.k. - in defendant January 19, 2006 supplemental response to plaintiff request to first set of interrogatories, it was stated that, Ms Bartlett asked, in substance, why can't you find a terrorist which you need one to bring down an airliner (another obvious misrepresentation in total conflict with outside counsel's statement in item 1.a.

1.l. - On page 14, response No.7 of defendant's response to plaintiff's request for supplemental data to first set of plaintiff's interrogatories it was stated, during this period one of the plaintiff's co-workers reported to human resources that the plaintiff frequently spoke of having access to guns and knives. This co-worker also reported, that plaintiff had been heard to tell others that she carried a gun in her purse.

1.m. - On page 19, response No. 10a.3 Cheryl Darcy reported to the defendant on or about April 1, 2004 that plaintiff bragged to several people that she had connections to the mob and that she has a person who will do her bidding. On or about May 5, 2005 Dorothy McAleer reported that plaintiff made similar comments. On or about May 6, 2004 George Sirrine reported that the plaintiff had

made previous comments about "connections" she has.

1.n. - On page 20 response No. 10a.4 of the January 19, 2006 supplemental response, Cheryl Darcy reported to defendant the plaintiff to have access to guns and knives.

1.o. - On page 22 response No. 10 of the January 19, 2006 supplemental response to plaintiff interrogatories, Cheryl Darcy stated that, a former employer Beau Emory Lifsey, told the group at the table that plaintiff not only told him that she carried a small handgun but she showed it to him. Darcy recalls that the others seated at the lunch table chimed into the conversation in agreement that plaintiff had also told them she carried a small handgun. (this alleged situation damages the defendant's entire defense case against the plaintiff. Beau Emory Lifsey had left APC more than one (1) year prior to the reporting of the handgun in handbag incident. The comments of Darcy tend to support the existence of numerous fictional reports regarding the plaintiff and her alleged statements. The redundancy and variation in the reporting of the alleged statements of the plaintiff is also support to the fictional nature of the collaborated effort to slander and defame the plaintiff.

1.p. - In the defendant January 16, 2006 statement of undisputed facts in support of its motion for summary judgment, in item No. 22, page 5 Cherl Darcy wanted to be on record with human resources that Ms. Bartlett was overheard stating that she carrier a pistol in her purse. Also in the January 16th statement, item No. 23

page 5, it was stated, in days prior to her termination, a co-worker reported and another confirmed an incident in which Ms. Bartlett had asked in substance, why can't you find a terrorist when you need one to bring down any airliner. ( again a statement of questionable validity, totally in conflict with outside counsel Testa, Hurwitz in the report to the EEOC mentioned previously). Item No. 25 in this January 16th document, stated that George Sirrine confirmed to the human resources department that Ms. Bartlett caused tension in the department and questioned her stability. He also confirmed that she made inappropriate statements about wanting a terrorist to bring down a flight to Florida that Dorothy McAleer frequents. (this statement again is in conflict with the Testa, Hurwitz statement in their EEOC letter and the stability statement is different than the one that she is not stable in his May 6, 2004 statement to human resources, another defamatory and slanderous statement with justified cause).

The plaintiff is aware of several additional contradictory statements of questionable truth and believes what has been submitted is enough to question the honesty and credibility of all individuals named making statements against the plaintiff. The plaintiff further believes that all statements made by defendant employees are untrue and malicious making alleged contentions reflection upon the character of the plaintiff that are injurious to her reputation. It is known by the plaintiff that Cheryl

Darcy's statements as the primary defendant complainant and mover of the fabricated charges against the plaintiff are incidents that have been widely discussed by employees within the plaintiff's former work department.

2. Plaintiff contends that Cheryl Darcy initiated and brought forward with the cooperation of Dorothy McAleer and George Sirrine all of the alleged incidents that have been reported by the defendant in this matter.

3. In addition numerous times during discovery documentation including motions of the defendant, the plaintiff is characterized as being hostile without defining any specifics which again represents a type of "labeling without justification". This is another example of improper character assailment that the defendant has frequently done.

**4. Defendant Argument Against Plaintiff's Age Discrimination Charge**

**Plaintiff's Response**

1. At the time of termination of employment plaintiff qualifies for age discrimination under provisions of ADEA for these reasons.

1.a. Plaintiff was age 63, the oldest member of her work department, a protected class employee under ADEA.

1.b. Plaintiff was replaced less than thirty (30) days after termination by a female employee some thirty (30) years younger, not a member of a protected class under ADEA.

1.c. Plaintiff was frequently offended by the sexual impropriety conversations of Cheryl Darcy that were not considered welcome or humorous to her or other over forty year old employees except employees such as Dorothy McAleer and Fran Wilcox with whom Darcy professed friendship. (plaintiff contends Darcy comments regarding Wilcox are not true.)

1.d. - As a protected class member the plaintiff was not provided considerations of application of the progressive disciplinary steps of the defendant's Correction Action procedure as were other protected (over age 40) members and former members of her work department. Plaintiff contends this fact and potential other provisions of the defendant's Corporate Personnel Policy regarding employee disciplinary action (to date provision to plaintiff refused is discovery requests) are further examples of discriminatory treatment that have been provided to several present and former employees of her work department, who are members of the protected class under ADEA.

**5. Defendant Argument Against Plaintiff's Retaliation Claim**

**Plaintiff's Response**

1. Plaintiff contends that retaliatory actions against her were initiated at her shortly after her March and April, 2004 letters to APC management challenging their actions regarding her, which she had a right to do.

2. The retaliation was further advanced and initiated by the actions of Cheryl Darcy who plaintiff had previously complained about to Penny Edwards regarding

Darcy's lack of timely processing of customer accounts receivable payments. Ms. Edwards and other APC management should have not revealed the source of the complaints or the source of the "condom throwing in the lunchroom incident" as the plaintiff. The plaintiff further contends this fact and the timing of Darcy's comments against the plaintiff that revealing of the plaintiff as the source motivated Darcy to move forward immediately to initiate the creation of the series of allegations against the plaintiff that have come forward.

3. If the decision to terminate the plaintiff's employment is proven to be based upon faulty, untrue information there are further potential consequences of this complaint to APC and their management recommending and making the termination decision.

3.a. In the plaintiff's April, 2004 letter to Brian Gough regarding the gun in handbag allegation, the plaintiff questioned and disagreed with the apparent lack of thoroughness and quality of his investigation of the matter as she understood it at the time.

## CONCLUSION

The plaintiff believes that she has raised sufficient enough questions regarding the manner in which her termination was handled to support denial of the defendant's summary judgment motion on all counts requested and respectively requests the Courts denial of summary judgment granting at this time.

Natalie Gill Bartlett pro se plaintiff

45 Lakeside Drive
Narragansett, RI 02882
(401) 782-1398

Date: January 27, 2006

**CERTIFICATION**

Gardner H. Palmer,Jr.
RODIO & BROWN, LTD.
91 Friendship Street
Providence, RI 02903

I hereby certify that I sent a copy of the within document to the party listed above by regular, first class mail, postage prepaid on the 27th day of January, 2006

Natalie G. Bartlett pro se plaintiff