UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| NATALIE GILL BARTLETT<br>Plaintiff | : | |
| VS. | : | C.A. No. 05-084 ML |
| AMERICAN POWER CONVERSION CORPORATION,<br>Defendant. | : | |

**DEFENDANT'S STATEMENT OF DISPUTED FACTS**
**IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

In accordance with LR Cv 56, Defendant American Power Conversion Corporation ("APC") submits this Statement of Disputed Facts in response to Plaintiff's Motion for Summary Judgment. Where possible, APC has cited to the record. However, APC's ability to fully comply with the Local Rule is hampered because Plaintiff did not follow the requirements of the rule.[1] Her Statement of Material Facts does not indicate that the referenced facts are undisputed, the statements are not cited to the record, the statements are not concise and many of the statements are, in fact, Plaintiff's beliefs. APC also refers the Court generally to APC's own Motion for Summary Judgment and its Statement of Undisputed Facts, filed on January 17, 2006, which are fully cited to the record.

1. APC disputes Paragraph 1. Plaintiff's assertion is actually an uncitated statement of ultimate fact. As to the assertion of wrongful termination, APC refers the Court to Paragraph 1 of APC's January 17, 2006 Statement of Undisputed Facts ("APC Statement") and Section II(1) of APC's Memorandum of Law in Support of Motion for Summary Judgment ("APC Memo").

[1] APC apologizes to the Court for its unconventional Statement of Disputed Facts, but feels it must respond in kind to Plaintiff's unconventional Statement of Material Facts to avoid acceptance of the "facts" as true under LR Cv 56(a)(3).

As for the reasons Plaintiff was terminated, APC refers the Court to Paragraphs 11-25 *inter alia* of the APC Statement and Section II(2) of the APC Memo, particularly pages 5-7. APC also notes that if, under Plaintiff's theory of the case, APC was already moving forward to terminate Plaintiff before her complaint about Cheryl Darcy and before the four letters were written, the termination could not have been due to the complaint or the letters.

2. APC disputes Paragraph 2. Plaintiff has testified that she has no facts to support her conspiracy theory. *See APC Statement, ¶¶ 61-63; APC Memo, pp. 22-24.*

2a. APC agrees that the documents contained in Exhibit 1 to Plaintiff's Motion for Summary Judgment reflect statements about Plaintiff that were either made, confirmed or acknowledged by Cheryl Darcy, Dorothy McAleer and George Sirrine, Plaintiff's former co-workers.

2b. Paragraph 2b is too vague to respond to in detail since it does not identify specific discovery requests as to which APC is alleged to have claimed privilege or protection under Rule 36. Notwithstanding, APC did not identify the documents contained in Exhibit 1 as privileged or protected under Rule 36. Furthermore, Plaintiff did not request these documents under Rule 34. APC produced the documents because APC may use them at trial. APC does not understand what Plaintiff is asserting in the last two sentences of Paragraph 2b, but does not understand them to be statements of fact.

2c. Paragraph 2c does not appear to be making a statement of fact; rather, as stated, it appears to be Plaintiff's contention concerning an unspecified APC discovery response. Because Plaintiff does not identify a specific discovery request as to which

APC is alleged to have claimed privilege or work product, APC is unable to fully respond. APC has not contended that personal data regarding Darcy, McAleer and Sirrine is subject to attorney-client privilege or work product. The information is not relevant to the dispute and could be subject to privacy concerns. APC does not dispute, but does not understand the significance of, Plaintiff's contention that the referenced statements were made several months before Plaintiff filed her EEOC charge and Complaint.

2d. APC disputes Paragraph 2d. Penny Edwards did not characterize Plaintiff as average during discovery. APC, not Penny Edwards, responded to Plaintiff's discovery requests. Plaintiff has testified that the appraisal she received was not retaliatory and that the Performance Appraisal meeting was not retaliatory. *APC Statement, ¶¶ 62-63; APC Memo, p. 24.* APC also notes that, if Plaintiff believes that the termination decision was made at the time of or before her Performance Appraisal, it cannot be true, as she claims, that other things that transpired after the review were the basis for her termination. APC is unable to respond to the remaining assertions of fact because the "facts" are not cited to the record and the assertions do not provide sufficient information for a response. Moreover, APC agrees that Plaintiff was not terminated for her collections results.

2e. APC disputes Paragraph 2e. Plaintiff cites no evidence in support of her contention and the inference she draws. Sirrine's alleged statement is inadmissible hearsay. Further, Plaintiff has testified that the only report she made to her supervisor or someone in a position of authority was the lunchroom condom incident at the March 22, 2004 meeting. *APC Statement, ¶¶ 28-29, 40-41, 43-45, 54-55; APC Memo, pp. 13-15.*

Plaintiff testified that Sirrine was not a supervisor and had no authority to address such reports, assuming they were made. *APC Statement, ¶¶ 40-41; APC Memo, p. 13 n.5.* She testified that she was aware of the proper procedures for addressing hostile environment or similar complaints at APC. *APC Statement, ¶¶ 54-55; APC Memo, p. 20.*

2f. APC disputes Paragraph 2f. It is a statement of Plaintiff's belief, not fact, and Plaintiff cites no evidence in support of her contention. Plaintiff's assertion as to what other employees know or do not know about the tuna fish sandwich incident are irrelevant and would be inadmissible hearsay anyway.

APC objected to the discovery requests for this information not because it is protected by privilege or as work product, but because it is not relevant to the dispute. The tuna fish sandwich incident, so-called, is entirely irrelevant, immaterial and inadmissible in this proceeding. The incident, such as it is, occurred in 1997, seven years before Plaintiff's termination. The issue in this case is whether APC violated the law in terminating Plaintiff, not whether Cheryl Darcy may have been involved in an incident with another co-worker seven years before Plaintiff was terminated and 5 years before she even became an APC employee.

2g. APC acknowledges that Plaintiff served Interrogatories and Requests for Production requesting personnel file data and clock-in information as referenced in Paragraph 2g. APC objected to the discovery requests under Rules 33 and 34, not Rule 36, because the information requested is not relevant to the dispute.

APC acknowledges Plaintiff's admission that "the primary reason for termination of the plaintiff's employment as stated by the defendant was the problems she caused with other employees within her work group."

Plaintiff's "belief" about Cheryl Darcy's alleged "protected" status is not admissible or relevant. Darcy was counseled for the lunchroom condom incident, which Plaintiff has acknowledged in her testimony. *APC Statement, ¶ 43; APC Memo, pp. 8, 14; Ex. 1, Bates No. 43, attached to Plaintiff's Motion*).

Plaintiff's statement concerning Darcy being the primary originator of the defamatory and slanderous allegations concerning Plaintiff is, by her own admission, a belief, not fact. APC acknowledges that Darcy was one of the co-workers who reported to APC about Plaintiff. APC does not consider it appropriate to respond to Plaintiff's belief regarding the character of Darcy's reports or Plaintiff's belief as to Darcy's resentment because her beliefs are neither relevant nor material. It is undisputed that the handgun report was made to APC. APC also notes that Plaintiff's stated belief that Darcy reported Plaintiff's alleged handgun statements because she resented Plaintiff for complaining about Darcy is at odds with Plaintiff's contention that Edwards colluded with Darcy, *inter alia*, to create a reason to terminate Plaintiff.

2h. Plaintiff's "belief" about George Sirrine's alleged "protected" status is not evidence, nor is her contention supported by competent evidence. Further, whether Sirrine is or is not protected has no relevance to Plaintiff's claims. Finally, Plaintiff's information concerning the so-called fish sandwich incident itself is inadmissible hearsay.

The balance of the assertions in Paragraph 2h are similarly not factual assertions material to this dispute, and are unsupported by any record citations.

2i. APC acknowledges that it objected in discovery to providing information regarding Dorothy McAleer's average clock-in time for 2002 and 2003, not because it is

protected, as Plaintiff claims, but because it is irrelevant and immaterial. Plaintiff testified that the favoritism her supervisor, Edwards, allegedly displayed toward McAleer was not based on any protected status of Plaintiff's, nor was it retaliatory to her. *APC Statement, ¶¶ 8, 36, 49; APC Memo, pp. 15, 17.*

Parenthetically, Plaintiff's assertion that she did not respect McAleer due to her questionable integrity and her accusations that McAleer engaged in theft from APC is consistent with the behavior that led to Plaintiff's termination.

2j. APC acknowledges that Plaintiff contends the Bo Lipsey [sic] situation contributed to her view that APC subjected her to a hostile environment. *APC Statement, ¶ 42.* The assertions she makes in Paragraph 2j are unsubstantiated and, as to her statements concerning other employees, based on inadmissible hearsay. More importantly, however, Plaintiff admitted that the Beau Lifsey "situation," accepting her version as true, was not predicated on her protected status. *APC Statement, ¶¶ 38-39; APC Memo, p. 16.* Her hostile environment claim stems from her belief that Title VII obligates employers to provide "safe" working environments. *APC Statement, ¶¶ 39; APC Memo, pp. 12-13.*

3. APC acknowledges that, as requested, it provided a copy of APC's Corrective Action policy, Bates-stamped 003. Plaintiff fails to identify the specific facts in APC's response to her EEOC charge that she is referring to. Accordingly, APC is unable to fully respond. Plaintiff was spoken to concerning her interactions with co-workers and, in fact, among the things that set Plaintiff off in her Performance Appraisal were Edwards' comments concerning Plaintiff's interactions with her co-workers. *Bartlett Depo, 11/28/05, p. 117, l. 7 – p. 118, l. 16* (Exhibit C to APC's Motion for

Summary Judgment). APC complied with its Corrective Action policy, which permits APC to take corrective action up to and including termination for "conduct that interferes with, or adversely affects the operation of the Company." APC's policy does not require progressive discipline. Although warnings are normally administered, "corrective action must be tailored on a case by case basis. It is understood that in certain instances of misconduct, violation of Company policy, or poor performance, may result in immediate termination of employment." *Ex. 2, Bates No. 003, attached to Plaintiff's Memo.*

APC met with Plaintiff several times from March 2004 through her termination in May 2004 concerning her conduct. Her reaction in her performance review and the following meeting, the reported co-worker comments, and her threatening behavior to her supervisor after the gun search, caused APC to consider Plaintiff too volatile to keep. *APC Statement, ¶¶ 14-26; APC Supplemental Interrogatory Answer No. 5* (attached hereto as *Exhibit A*).

3a. APC disputes Paragraph 3a. APC produced its Corrective Action policy in response to Request No. 1 of Plaintiff's Request for Production of Documents. In fact, Plaintiff has attached the policy as Exhibit 2 to this Motion.

APC has never refused to provide its disciplinary policy to Plaintiff. She has admitted that APC's policies were always available to her on the company intranet. *APC Statement, ¶ 54, 55.* Plaintiff "believes" that APC has some other disciplinary policy that it has not disclosed to Plaintiff. That is incorrect. APC has provided the document that is responsive to her Request No. 1 and has so advised Plaintiff.

3b. Plaintiff's Paragraph 3b does not assert a fact; it asks a question. Plaintiff provides no evidentiary basis for her question or for her assertion that APC confirmed the absence of derogatory information in her personnel file. Plaintiff has not cited to any APC response to that effect. Paragraph 3b is, in fact, an expression of Plaintiff's belief and argument, not fact.

As to Plaintiff's contention that Paragraph 3b supports her retaliation claim, Plaintiff has testified that the actions she claims as retaliatory were for her challenge of APC management and her performance review, and for no other reason, including her participation in any protected activity. *APC Statement, ¶¶ 56-65; APC Memo, pp. 20-22.*

3c. Plaintiff's Paragraph 3c does not assert a fact; it asks a question. Plaintiff again provides no evidentiary basis for her question or for her assertions contained within the question. Paragraph 3c expresses Plaintiff's "beliefs" that she was discriminated against, not record fact.

3c. [sic] APC disputes Paragraph 3c [sic] to the extent it expresses purported facts as opposed to Plaintiff's beliefs and argument. APC again states that it did not refuse to provide its disciplinary policy and it is attached to Plaintiff's Motion as Exhibit 2. None of Plaintiff's beliefs are substantiated with record citations.

Contrary to Plaintiff's assertion, APC has disclosed to Plaintiff in detail the reasons for her termination. They are not "undefined non-specific actions of the plaintiff not yet defined by defendant management." Plaintiff may not accept the reasons, but that does not mean they are undefined.

APC notes that, in this paragraph, Plaintiff asserts that the letters she wrote to APC were *after* APC had decided to terminate her. Accordingly, under Plaintiff's

theory of the case, her termination could not be "because of" the letters she wrote. Moreover, Plaintiff has testified that the "retaliation" she endured was for challenging management. *APC Statement, ¶¶ 56-57; APC Memo, pp. 20-22.*

4. APC disputes Paragraph 4 and believes it fully complied with its obligations in responding to Plaintiff's discovery requests. Moreover, even if true, this "fact" is not material to any of Plaintiff's causes of action.

5. APC has served Supplemental Answers to Interrogatories on Plaintiff.

6. APC disputes Paragraph 6. This is a statement of Plaintiff's opinion and belief, not record fact. APC contends that it has provided Plaintiff with detailed responses to all of Plaintiff's relevant inquiries.

7. Much of Paragraph 7 states Plaintiff's opinion and belief, not record fact. Additionally, Plaintiff has testified that she was *not* told APC had to eliminate a position at the time she was terminated. *APC Statement, ¶ 11; APC Memo, p. 5.*

APC agrees with Plaintiff that she was terminated "due to the alleged problems with others that the plaintiff is accused of causing."

8. APC disputes Paragraph 8. This is a statement of Plaintiff's contentions and beliefs, unsubstantiated by evidence or record citations.

AMERICAN POWER CONVERSION CORPORATION
By its Attorneys,

[signature]

Gardner H. Palmer, Jr. Esq. (#3707)
RODIO & BROWN, LTD.
91 Friendship Street
Providence, RI 02903
401 274-4040
401 274-4099 Fax
gpalmer@rodiobrown.com

Date: February 3, 2006

**Natalie Gill Bartlett**
**vs.**
**American Power Conversion**
**Corporation, *et al.***
**C.A. No. 05-084 ML**

## CERTIFICATION

Natalie Gill Bartlett
45 Lakeside Drive
Narragansett, RI 02882

I hereby certify that I sent a copy of the within document to the party listed above by regular, first class mail, postage prepaid on the 3rd day of February, 2006.

Helen Renaud