plaintiff compared to other department members, 2) the existence of a hostile and sexually inappropriate work environment, 3) the existence of favoritism provided certain department employees regarding disciplinary matters, 4) the possibility of department and other APC management protection provided to certain employees to obtain slanderous and false statements regarding the plaintiff's character and alleged statements made by the plaintiff, 5) relationship to the undefined problems that APC management said that the plaintiff caused with others within the work environment.

**Supplemental Response No. 4:** Defendant stands by its initial response.

5. Please provide the specific reasons why the plaintiff was not afforded any entitlements or protection under APC Corporate Personnel Policy, APC Corporate Code of Ethics & Business Conduct and other APC policies designed to address employment entitlements protected under the provisions of Title VII and ADEA.

**Response No. 5:** Defendant objects to this Interrogatory because it assumes facts that have not been established. Defendant further objects because the Interrogatory is vague and ambiguous as to the specific entitlements and protections Plaintiff believes she was entitled to but not afforded under the referenced APC policies. Notwithstanding and without waiving the objection, Defendant denies that Plaintiff was not afforded any entitlements or protection under APC policies.

**Plaintiff's November 25, 2005 Statement:** The defendant's answer is evasive in nature and does not address the question of why the plaintiff was not entitled to the

portion of APC Corporate Personnel Policy regarding employee disciplinary action for the yet undefined problems with others that the plaintiff is alleged to have caused. Defendant has not yet provided the requested detailed Corporate Personnel Policy regarding employee disciplinary action which is important to the plaintiff's belief that she was discriminated against as compared to several other department members having committed much more severe offenses compared to the unproven ones to which the plaintiff is accused to have committed.

**Supplemental Response No. 5:** In accordance with APC's Corrective Action policy, progressive discipline is not guaranteed and is not used in every case. APC follows a progressive disciplinary process when it is in the best interest of APC, the employee, and other employees within the organization. In this case, Mrs. Bartlett met with her supervisor, her supervisor's supervisor and with representatives of Human Resources on several occasions on and after March 22, 2004 to discuss Mrs. Bartlett's conduct and her improper and hostile response to her supervisors. The seriousness of Mrs. Bartlett's conduct and the disruption she caused within her department warranted termination. Her hostility and degree of disruptiveness increased throughout this period; and the combination of threats regarding having a terrorist take down a plane, reports of a handgun and expressions of concern by co-workers made the situation too tenuous for the company to risk a drawn out disciplinary process.

Penny Edwards, Mrs. Bartlett's supervisor, was also concerned, based on the forcefulness of Mrs. Bartlett's response to her performance review, her aggressive approach in meetings with management and Human Resources and her threatening response to the handbag search, that issuing a warning to Mrs. Bartlett could provoke her into an even more hostile response. Because of the volatility of Mrs. Bartlett's conduct during this time frame, APC decided that termination was appropriate.

6. Plaintiff requests a specific definitive statement regarding the reason(s) for the termination of her employment including:

a. The reason for APC's advising the State of Rhode Island Department of Labor and Training that plaintiff was discharged because of poor performance.

**Response No. 6a:** Information provided to the Rhode Island Department of Labor and Training relative to unemployment insurance is managed through Defendant's payroll department. That department limits its responses to generalized reasons for termination. In the unemployment context, "poor performance" is used to cover a wide range of issues, including poor conduct.

b. The specific reasons underlying APC's reporting to their legal counsel, Testa, Hurwitz & Thibeault the statement that, "APC was forced to eliminate one Collections Representative position", focusing on the specific meaning of the word forced in this situation.