**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **Natalie Gill Bartlett** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | |
| v. | : | **CASE: CA 05 084 ML** |
| | : | |
| | : | |
| **American Power Conversion Corporation** | : | |
| **Defendant** | : | |

**PLAINTIFF, NATALIE GILL BARTLETT'S**
**MOTION TO COMPEL**

Plaintiff, Natalie Gill Bartlett, pursuant to Federal Rule of Civil Procedure No. 37, requests the Court to compel Defendant, American Power Conversion Corporation to provide the information requested in plaintiff's first set of Interrogatories to the defendant, Nos. 4, 4a., 4b., No. 5. and the plaintiff's first request for Production of Documents Nos. 1, 16 and 17. Approval of this Motion is requested due to the Defendant's continual refusal to provide the requested disclosure which the plaintiff believes contains information critical to the support of her complaint and that the refusal to provide the requested data provides the defendant a biased, unfair advantage as compared to the plaintiff. The plaintiff further believes its provision will support the plaintiff's claims of discriminatory treatment as compared to other former and present work department employees of the protected class (age 40 and over) and that it will

establish questionable credibility and integrity of certain employees making the formal statements regarding alleged statements made by the plaintiff that served as the primary basis for defendant's management decision to terminate employment.

In support of this Motion, Plaintiff respectfully refers the Court to Exhibits 1 through 4 attached and made a part of the Motion.

**PLAINTIFF'S CLAIMS IN SUPPORT OF DEFENDANT'S FAILURE TO DISCLOSE AND EVASIVE DISCLOSURE OF THE DEFENDANT**

**For Plaintiff's First Set of Interrogatories to Defendant**

**Interrogatory No. 4**: During the period of October 2001 through May of 2004 please provide identification of any formal personnel file documented disciplinary action provided the present or former APC employees under APC Corporate Personnel Policy entitlement: George Sirrine, Cheryl Darcy, Mary Silvia, Beau Lifsey, Fran Wilcox, and Sharon Bleisel. The date of the disciplinary actions such as warnings, probation or other formal disciplinary action in incident summary form without detail is adequate.

a. For George Sirrine, Cheryl Darcy and Sharon Bleisel please provide the date prior to October 2001 as well as a summation of the disciplinary action provided each regarding the tuna fish sandwich smashing in the face incident and the throwing of a punch and the name of the then employed APC employee/s that witnessed this.

b. For Cheryl Darcy, in addition to the situation in point No. 4.a., please include any and all documentation or summary descriptions with dates regarding any type of counseling or warnings regarding all incidents of verbal sexual improprieties or conflicts with other department employees in addition to the data requested in point No. 4.a.

**<u>Summation of Defendant Responses to Plaintiff Interrogatory No. 4</u>**

**Defendant reply to Plaintiff's first set of interrogatories dated October 20, 2005, interrogatory No 4.**

"Defendant objects to this Interrogatory because it seeks information that is neither relevant or reasonable calculated to lead to the discovery of admissible evidence, is overly broad as to scope and time, is unduly burdensome and seeks employee information that is confidential. Defendant further objects because the Interrogatory is vague and ambiguous as to "entitlement," and "verbal sexual improprieties or conflict with other department employees."

**Plaintiff's November 25, 2005 letter to defendant in response to defendant's response to plaintiff's interrogatory No. 4:** The information as requested in this interrogatory is important to the plaintiff and if the defendant is unwilling to provide such, the plaintiff will request a hearing before the judge regarding it. The requests in this interrogatory have important relevance to 1) discriminatory treatment of the plaintiff compared to other department members, 2) the existence of a hostile and sexually inappropriate work environment, 3) the

existence of favoritism provided certain department employees regarding disciplinary matters, 4) the possibility of department and other APC management protection provided to certain employees to obtain slanderous and false statements regarding the plaintiff's character and alleged statements made by the plaintiff, 5) relationship to the undefined problems that APC management said that the plaintiff caused with others within the work environment.

**Defendant supplemental response to plaintiff first set of interrogatories dated January 19, 2006, interrogatory No. 4.**

"Defendant stands by its initial response".

**Plaintiff's response to defendant's January 19, 2006 supplemental response to plaintiff's first set of interrogatories, interrogatory No. 4**

"Plaintiff has knowledge of specific situations for named current or former defendant employees and the situations regarding the potential of disciplinary action provided each. Therefore the original request stands as stated and if the defendant continues to withhold the requested information the plaintiff will request a court hearing to request that such data as requested be provided.

Related to the possibility of the requested data being employee confidential or privileged, the plaintiff contends that the data is neither because the requested data is known by several current or former employees of the defendant and was openly frequently discussed by department employees in the dysfunctional out of

control environment that existed while the plaintiff was employed."

**Defendant letter response of February 3, 2006 responding to plaintiff's letter to defendant of January 24, 2006 requesting supplemental discovery responses from APC, for interrogatory No. 4.**

"On the state of the record, we do not see how you can establish the relevance of these disciplinary histories, if any even exist. Nevertheless, if you can show that your co-workers were involved in situations that are similar in all relevant respects to your situation and articulate how, in light of the existing record, your co-worker's treatment in those situations supports your age or retaliation claims, we will reconsider our position."

**Plaintiff's Response:** Defendant's response again evades answering the plaintiff's request in interrogatory No. 4.a. Plaintiff believes that the requested information will support her age discrimination claim as well as components of Title VII where it is stated that members of a work group can not be treated differently than other members of that group which represents discriminatory treatment. In addition all of the former co-workers for which data is requested are all members of the protected class under ADEA (age 40 and over). In addition the plaintiff believes that provision of the requested data will prove that the plaintiff was not afforded any consideration under the provision of the defendant's Corporate Personnel Policy (plaintiff requested multiple times, not yet provided,

covered under Request for Documents) which she believes to have been afforded several of the former co-workers for whom she is requesting data, which if established as fact, again represents discriminatory action on the part of the defendant. **(A more detailed response to the defendant regarding this item is contained in the plaintiff's letter of February 9, 2006 to defendant counsel included as Exhibit No. 1)**

**Defendant letter of February 10, 2006 responding to plaintiff's letter of February 9, 2006 again explaining the significance of the data requested in interrogatory No. 4. a. and b.**

Defendant counsel legal opinion does not address the points made by the plaintiff in her letter of February 9, 2006 (included in this motion as Exhibit No.1). Counsel states, "As for the remainder of your letter, our prior responses stand".

**Significance of Defendant Providing The Plaintiff's Requested Data In Interrogatory No. 4.**

Provision of the requested data establishes the presence of potential discriminatory treatment of the plaintiff as compared to several other present and former employees of her work group, which when factually established violates the provisions of Title VII and ADEA since all individuals for which the information is requested are members of the protected class (age 40 and over).

**Interrogatory No. 5**: Please provide the specific reasons why the plaintiff was not afforded any entitlements or protection under APC Corporate Personnel Policy, APC Corporate Code of Ethics & Business Conduct and other APC policies designed to address employment entitlements protected under the provisions of Title VII and ADEA.

**Summation of Defendant Responses to Plaintiff Interrogatory No. 5**

**Defendant reply to Plaintiff's first set of interrogatories dated October 20, 2005, interrogatory No. 5.**

"Defendant objects to this interrogatory because it assumes facts that have not been established. Defendant further objects because the Interrogatory is vague and ambiguous as to the specific entitlements and protections Plaintiff believes she was entitled to but not afforded under the referenced APC policies.
Notwithstanding and without waiving the objection, Defendant denies that Plaintiff was not afforded any entitlements or protection under APC policies".

**Plaintiff's Response**: Defendant has improperly evaded a meaningful reply and refuses to specifically answer plaintiff's Interrogatory No. 5. For some reason the defendant is unwilling to answer this interrogatory and has refused to provide the plaintiff a copy of the American Power Conversion Corporate Personnel Policy 4 (four) times as requested in Production of Documents which infers that the defendant is attempting to hide provisions that could have benefited the plaintiff in support of her complaint.

**Defendant's January 19, 2006 supplemental response to Plaintiff's first set of interrogatories, interrogatory No. 5.**

"Defendant objects to this interrogatory because it assumes facts that have not been established. Defendant further objects because the Interrogatory is vague and ambiguous as to the specific entitlements and protections Plaintiff believes she was entitled to but not afforded under the referenced APC policies. Notwithstanding and without waiving the objection, Defendant denies that Plaintiff was not afforded any entitlements or protection under APC policies".

**Plaintiff's letter of January 24, 2006 responding to Defendant's January 19, 2006 response to Plaintiff's interrogatory No. 5**

Plaintiff contends that the defendant has purposely suppressed addressing this request as well as provision of the defendant's Corporate Personnel Policy that covers the administration of disciplinary action to employees. And until the plaintiff receives a copy of this policy detailing the application of disciplinary action to employees she will continue to request its provision as potential critical information related to her complaint.

The plaintiff is not referring to the Corrective Action procedure of the defendant provided in discovery but instead the section of defendant Corporate Personnel Policy that covers the administration of disciplinary action in regard to how to apply the progressive steps of disciplinary action. The plaintiff believes this

to exist and expects to better understand the reasons why the plaintiff was not offered the application of any disciplinary procedures offered under Corporate Policy.

The answer that the plaintiff's alleged actions were so serious that moving directly to termination of employment is challenged by the plaintiff as an inadequate reason for dismissal until proven beyond doubt that the plaintiff is guilty of the alleged serious and disruptive behavior that the defendant reports.

The plaintiff's alleged hostile responses toward the plaintiff's superior has never been specifically defined and therefore is considered hearsay by the plaintiff. The alleged statement of the plaintiff of having a terrorist take down an airliner is untrue and another example of the twisted comments of certain defendant employees. The particular employee making this accusation is guilty of severe integrity problems in her daily violation of defendant company policy for smoking breaks and years of company paid breakfasts eaten at her work desk witnessed by numerous current and former employees. The defendant has lost hundreds of hours of employee time during this employees employment due to her blatant dishonesty and favoritism and discriminatory treatment afforded her by her manager, Penny Edwards.

The plaintiff is serious regarding the defendant provisions of the reasons requested in this interrogatory and fails to understand why the defendant is refusing to provide such unless they are trying to suppress certain information the plaintiff was not provided that potentially represents discriminatory treatment.

**Defendant letter response of February 3, 2006 responding to plaintiff's letter to defendant of January 24, 2006 requesting supplemental discovery responses from APC, for interrogatory No.5.**

"Apart from your apparent belief that APC has not fully responded to your Document Request for APC's disciplinary policy, this request appears to do nothing more than challenge the truth of APC's Interrogatory Answers. That you do not like or believe APC's answers does not make them deficient. As for your 'belief" that there exists a policy at APC apart from its Correction Action policy, that "covers the administration of disciplinary action in regard to how to apply the progressive steps of disciplinary action," we have previously advised you that we are not aware of any such document. Perhaps you can disclose the facts that you have that underlie your "belief that such a document exists and that APC is withholding it from you, as you have repeated to the Court several times.

**Plaintiff's response to defendant letter of February 3, 2006 responding to defendant response to plaintiff interrogatory No. 5 request**

(this intitial response is contained in plaintiff letter to defendant counsel of February 9, 2006, letter included as Exhibit No. 1 of this Motion responding to defendant statement made in their letter of February 3, 2006 listed at the top of this page).

Defendant's counsel's statement that we are not aware of any such document, referring to the plaintiff's request for a copy of the defendant's Corporate Personnel Policy related to administration of employee disciplinary action, does not mean that such documentation does not exist. Therefore the plaintiff will continue to request a copy until the defendant provides a copy of the requested information or provides a statement that the defendant Corporate Personnel Policy does not include any provision for or procedure for the application of employee disciplinary action.

**Plaintiff's additional comments**: Defendant has not ever answered this important question for whatever reason. Simply, does the defendant have such a policy or do they not have one? Of more than 1,000 U.S. public and private corporations with annual revenue above the one billion dollar level, if APC does not have such a policy, they may be the only exception. The disciplinary action steps included in the defendant's Corrective Action procedure are simply words, which do nothing to detail how and under what circumstances the components are to be applied to APC employees.

**PLAINTIFF'S CLAIMS IN SUPPPORT OF DEFENDANT'S FAILURE TO <u>DISCLOSE AND EVASIVE DISCLOSURE OF THE DEFENDANT</u>**

**For Plaintiff's First Request for Production of Documents to Defendant**

**<u>Item No. 1</u>:** A copy of the APC Corporate Personnel Policy covering the specific disciplinary action procedures for implementation with employees, both exempt

and non-exempt (hourly paid) when those employees have been designated as having or causing problems that qualify them as candidates for termination of employment.

**Defendant Response:** The defendant has been evasive or refusing to answer this request 4 (four) times in their responses mentioned under the same Defendant Responses as those made to the plaintiff's first set of Interrogatories to the Defendant.

**Plaintiff Contention:** Whether or not such a policy exists, and if so, provision of such copy is viewed by the plaintiff as an item of critical importance in her complaint. The Defendant's refusal to properly address this request infers that the defendant may be attempting to obstruct provision of such documentation regarding this request that may prove unfavorable to their defense.

**Plaintiff Request for Production Item No. 16**: Copies of any documents regarding Cheryl Darcy's improper sexual related behavior including any documents covering the tuna fish smashing in face incident.

**Plaintiff's Comments and Contentions**: The defendant repeatedly refuses to address this request stating that the tuna fish sandwich incident since it occurred prior to the plaintiff's APC employment is not relevant and refuses to provide any other information in regard to Cheryl Darcy other than confirming that she was disciplined for the throwing the condom incident in front of a co-worker during one lunch hour which was complained about by the plaintiff.

The plaintiff had been told by George Sirrine during her employment that Cheryl Darcy's personnel file contained numerous warnings and other documentation

regarding complaints that co-workers had made regarding Cheryl Darcy.

The plaintiff's contention is that Cheryl Darcy should not be protected in any manner regarding this Request for Production of Documents since it is apparent that Cheryl Darcy was the primary initiator of the employee statements alleged to have been made by the plaintiff. These statements of Cheryl Darcy, George Sirrine and Dorothy McAleer are all highlighted in the APC co-worker statements provided as Exhibit No. 3 (three) of this motion. Cheryl Darcy's statement (highligted as Exhibit No. 3.a.) in page No. 22 of the defendant's supplemental interrogatory dated January 19, 2006, that Beau Emory Lifsey, a former co-worker told Cheryl that the plaintiff showed him her handgun appears to be the primary motivator that resulted in the plaintiff handgun search, and the alleged plaintiff comments of owning guns and knives, the Rhode Island mob connections, the having things taken care of and finding a terrorist to take down an airliner.

The plaintiff has charged collaboration of Darcy, Sirrine and McAleer of bringing forth these despicable fabrications of the truth. When it is considered that the alleged Lifsey being shown a handgun by the plaintiff evidently started the collaboration between the three employees to discredit the plaintiff, their statements lose credibility since Beau Emory Lifsey had left the employment of APC more than one year prior to Cheryl Darcy's bringing forth the showing of the handgun allegation and the related statements of Cheryl Darcy, George Sirrine and Dorothy McAleer. It would seem reasonable that testimony of Beau Emory Lifsey before the Court that the

showing of the handgun did not occur would provide major damage to the validity of the defendant's charges against the plaintiff since this incident is the primary one related to all of the other allegations. Also in Exhibit No. 4, the statement of APC outside counsel in providing the APC answer to the plaintiff's EEOC charges will support lack of validity of Sirrine's, Darcy's and McAleer's comments regarding the taking down of an airliner allegation.

**Plaintiff's Request for Production Item No. 17:** Copies of any documents regarding George Sirrine's improper actions in the smashing of the tuna fish sandwich in face incident and throwing of the punch at an APC employee.

**Defendant Response**: Defendant has refused to fulfill this request several times citing its lack of relevance to the plaintiff's complaint.

**Plaintiff's Contention**: Since Sirrine in statements made included in Exhibit No. 3 of this motion has supported all of the alleged statements of the plaintiff regarding carrying a handgun, connections to the Rhode Island mob and finding a terrorist to take down an airliner, his discipline regarding the tuna sandwich and punch throwing incident should not be exempted from provision. In addition during her deposition defendant counsel asked the plaintiff if she once showed George Sirrine her black laced panties which he evidently advised defendant counsel of such occurrence. This absurdity is another example of the preposterous nature of the fictional lies existing in the statements of

George Sirrine, Cheryl Darcy and Dorothy McAleer whom collectively are the primary statement makers regarding the alleged comments of the plaintiff. Since the plaintiff has worn Depends type protective products for about 20 (twenty) years due to physical damage resulting from the birth of two near 10 (ten) pound children, 31 and 34 years ago. She views this allegation as just another example of the slanderous type of assault that defendant employees have levied against her personal character.

Pursuant to Federal Rules of Civil Procedure No. 37, Plaintiff requests that the Court enter an Order requiring the Defendant providing the specific answers and data requested for the aforementioned Interrogatories and Production of Documents within ten (15) days of the date of this Motion.

Natalie Gill Bartlett plaintiff
45 Lakeside Drive
Narragansett, RI 02882
(401) 782-1398

**Plaintiff's Attached Exhibit No. 1, Plaintiff letter to Defendant Counsel of February 9, 2006**

The primary purpose of this letter is response to Defendant Counsel letter to the plaintiff of February 3, 2006 in addressing certain issues regarding the defendant's refusal to provide certain data requested multiple times and not provided during discovery. In this letter the plaintiff has made the effort to attempt to make it clear the relevance of the requested information and other data to her complaint but the defendant uses primarily general statements for refusal of provision and makes certain judgments regarding the lack of relevance of several items to which the plaintiff disagrees. The continuous evasion of provision of the requested data does not represent a good faith effort by the defendant while the plaintiff has been open in revealing all of the aspects of her complaint against the defendant that she believes has relevance in the Complaint.

**Plaintiff's Attached Exhibit No. 2, Plaintiff letter to Defendant Counsel of February 16, 2006**

The primary purpose of this letter is response to Defendant Counsel letter to the plaintiff of February 10, 2006. This letter again in good faith attempts to fully disclose the plaintiff's contentions against certain APC employees whom the plaintiff believes collaborated in an effort to discredit and defame the plaintiff by making a series of unfounded, untrue statements regarding comments made by the plaintiff that disparage her, making a series of alleged claims against the plaintiff, that APC

management used as the primary basis for termination of the plaintiff's employment.

This letter also attempts to gain further disclosure of important items in the plaintiff's Complaint that the defendant continues to refuse to provide. As of this date Defendant Counsel has not responded to this letter.

**Plaintiff's Attached Exhibit No. 3**, selected copies of APC employee statements regarding alleged comments of the plaintiff. Of special significance is the one marked as Exhibit 3.a. which highlights the statement of Cheryl Darcy stating that Beau Emory Lifsey told her that the plaintiff showed him her handgun. The plaintiff believes this statement to be of special significance in this complaint, because Beau Emory Lipsey had left the employ of the defendant more than one year prior to the statement of Cheryl Darcy being made which poses a viable question of authenticity of the Darcy statement since it appears to be the primary defendant statement that preempted all of the additional comments allegated to have been made by the plaintiff.

**Plaintiff's Attached Exhibit No. 4, a copy of the APC initial response to the plaintiff's EEOC Complaint, relative to alleged plaintiff statement desiring to find a terrorist to take down an airliner.**

The footnote marked as point 2 on page 3 of the November 2, 2004 letter to

the EEOC written by APC outside counsel refutes the serious nature of the statements regarding the plaintiff alleged desire to find a terrorist to take down an airliner highlighted in the APC employee statements included in Exhibit No. 3. This is another example of the suspect integrity of Dorothy McAleer, George Sirrine and Cheryl Darcy and the validity of any statements made by them.

**Plaintiff's Comments Regarding Defendant Alleged Statements Against Her**

Isn't is strange that none of the other six (6) present and former APC employees with whom the plaintiff worked have not made any formal statements regarding the alleged "serious problems" the plaintiff caused with her co-workers while employed at APC?

Only Cheryl Darcy, George Sirrine and Dorothy McAleer have made these statements. It is believed by the plaintiff that each of these individuals have worked for their department manager, Penny Edwards eight (8) or more years which supports the plaintiffs belief that intentional collaboration existed between them to create a series of untrue, serious allegations against the plaintiff that APC management used to justify her termination of employment since **no other specific allegations have been made against the plaintiff,** only general ones. The plaintiff believes that her beliefs represent a factual portrayal of what occurred in her situation and that the statements of Darcy, Sirrine and McAleer highlighted in Exhibit 3 are representative of the personal integrity and character displayed by them.

Natalie Gill Bartlett pro se plaintiff

45 Lakeside Drive
Narragansett, RI 02882
(401) 782-1398

Date: March 28, 2006

**CERTIFICATION**

Gardner H. Palmer,Jr.
RODIO & BROWN, LTD.
91 Friendship Street
Providence, RI 02903

I hereby certify that I have made several good faith attempts with the defendant since November 2005 in efforts to secure the requested discovery disclosures without success in attempt to avoid further court action. I certify that I sent a copy of the within document to the party listed above by regular, first class mail, postage prepaid on the 28th day of March, 2006.

Natalie G. Bartlett pro se plaintiff