**Natalie G. Bartlett** **45 Lakeside Drive, Narragansett, RI 02882**
**phone 401 - 782-1398** **email pchathamgrp@aol.com**

February 9, 2006

Attorney Gardner H. Palmer, Jr.
Rodio & Brown, Ltd.
91 Friendship Street
Providence, RI 02903

Re: Bartlett v. American Power Conversion Corporation, C.A. No. 05-084ML

Dear Attorney Palmer:

This letter responds to your February 3, 2006 letter responding to the plaintiff's request for additional discovery information.

You are correct in your statement that my Motion of Summary Judgment appears to address discovery issues rather than merits of the complaint only. The discovery issues are considered by the plaintiff to be critical components of the complaint that have not yet received a satisfactory response from the plaintiff's viewpoint. This letter will respond further to the needed responses as well as respond to several of the points made in your letter.

The plaintiff believes that the discovery requests to the defendant have been adequately clear regarding what has been requested, but that the defendant has not been willing to provide the information requested, which infers intent to suppress what the plaintiff believes is critical information in regard to bringing her complaint forward. This letter in addition to the plaintiff's Statement of Pretrial Memoranda, a copy sent to defendant counsel January 31st, should be helpful in clarifying further why the requested information is important to the plaintiff.

Regarding your comments for the new "situations". Within the past ten days the plaintiff for the first time learned of the parking lot incident from a former employee of ProStaff assigned to APC involved in the incident. When security videotapes reveal that an APC employee tries to hit this individual with her car in the employee parking lot, indicates that this incident to be a far more serious than the accumulation of the APC employee statements of comments alleged to have been made by the plaintiff.

The other incident regarding the employee check distribution problem occurred more than one (1) year prior to the plaintiff's termination. The plaintiff believes that this situation is appropriate to introduce since the alleged plaintiff's showing of a handgun to Beau Emory Lifsey that Cheryl Darcy introduced, occurred more than one (1) year

EXHIBIT NO. 1

prior to the plaintiff's termination, which it and related employee comments appear to be a major point in the defendant's decision to terminate the plaintiff's employment. These two additional situations plus the September 9, 2003 email of Karena Burnham, (of which defendant counsel has a copy), all provide further support to the existence of the hostile work environment in which the plaintiff worked during her employment at APC.

**Plaintiff's Interrogatory No. 4:**

Regarding the disciplinary history of Cheryl Darcy and George Sirrine during their APC employment, the plaintiff considers these items of critical importance to the forward progression of her complaint. As far as Dorothy McAleer, her personal credibility in this case regarding any statement's she has made is totally suspect due to her provable integrity problems regarding abuse of the APC smoke break policy and her eating of a company paid breakfast for years causing APC improper expenditures of thousands of dollars paid for overtime and other lost work hours. Existence of this fact is known by several defendant present and former employees.

As for Darcy, it is clear from discovery statements provided by the defendant that Darcy was the originator of the gun in handbag allegation which she brought forward after her stated learning of this possibility during an alleged discussion with Beau Emory Lifsey **more than one year prior to the plaintiff's termination**. A testimony of Lifsey that this is not true and its related aspects the plaintiff believes, puts the defendant's entire argument against the plaintiff at risk. The reason for this is that everything else in the defendant's statements of problems alleged to have been caused by the plaintiff related to her former work department employees ties to matters initiated by Chery Darcy starting with the alleged handgun incident.

The other important statement in this case by Cheryl Darcy, Dorothy McAleer and George Sirrine is the untrue statement's that they all overheard the plaintiff or other employees within their department saying that the plaintiff was overheard saying that the plaintiff wished she could find a terrorist to take down an airliner that Dorothy McAleer regularly flew to and back from Florida. This is a very serious statement that only came forth during discovery. It is totally different and a more serious one than that reported by APC outside counsel of the Testa, Hurwitz firm in their November 2, 2004 position statement to the EEOC and it disproves the factual nature of the statements of Darcy, McAleer and Sirrine properly classifying them as lies, which the plaintiff considers a major issue in her complaint.

It is also doubtful that the APC Corporation desires to be party to a statement falsely made by several of its employees regarding the alleged hearing of a former employee that she wanted to find a terrorist to take down an airliner. It is doubtful that APC would want this situation reported to the appropriate Federal Agency for investigation.

In addition the Penny Edwards statement that Karena Burnham was one of the complainants to her regarding the plaintiff prior to the administration of the plaintiff's March 22, 2004 annual performance appraisal, when Karena had left the employment of ProStaff working at APC more than six (6) months prior to the plaintiff's review discussion. This statement by Edwards again appears to lack credibility.

These three situations discussed in total justifiably question the integrity of these three employees, their management and of the APC Corporation in being a party to the series of preposterous lies that have unjustifiably slandered and served as the basis for discriminatory actions against the plaintiff.

Defendant's counsel during the plaintiff's deposition asking her, "is it true that you showed George Sirrine your black laced panties" is another unreal example of the preposterous weak defense of the defendant and the type of untrue, statements that they have fabricated. This one is of particularly poor judgment, since the plaintiff has worn Depends type products daily for more than twenty years due to the birth of two, approximately ten pound children, thirty four and thirty one years ago and the related physical damage caused her at birth. This is another example of the poor judgment and lies that defendant employees have brought forth in their complaint defense.

To answer the defendant counsel's question, explaining how knowing the disciplinary history of Cheryl Darcy, Dorothy McAleer, George Sirrine and any other co-workers to whom your letter might be referring helps you prove any of your substantive discrimination claims.

The plaintiff believes that the disciplinary action related matters in the files of George Sirrine, Cheryl Darcy as well as those of former employees Beau Emory Lifsey, Mary Silvia, Fran Wilcox adding Deborah Robars due to the "new" parking lot incident, (all employees being members of the over 40 protected class), will show that all of these present and former employees were all provided application of one or more of the provisions of the defendant's Corrective Action procedure which the plaintiff was not accorded.

For example George Sirrine told the plaintiff several times that nothing could be done regarding Cheryl Darcy's frequent sexually improper, unwelcome comments in the workplace. This infers protection of some type accorded Cheryl by the defendant. The plaintiff has heard Cheryl brag about "her protection" more than once when she discusses the "tuna fish smashing in the face incident". The plaintiff knows other present and former employees that have heard Cheryl brag about this protection.

The plaintiff further believes that this "protection" is factual and is primarily related to the tuna fish smashing in face and throwing of a punch incident and that

there also exists in Cheryl's personnel file accounts of a significant number of other situations or incidents for which Cheryl received disciplinary action.

If proven that Cheryl has been the subject of many complaints regarding her behavior, any favorable treatment that she has been provided by the defendant, would represent significant comparative discrimination when compared to the plaintiff's situation. If it is proven that one or more other present and former APC co-workers of the plaintiff were provided disciplinary action under provisions of the defendant's Corrective Action procedure or under provisions of the defendant's Corporate Personnel Policy (once received by the plaintiff) it would further support the plaintiff's contention of discriminatory comparative treatment.

Furthermore the plaintiff did not ever receive a verbal warning from Penny Edwards regarding any type of specific indication that any of the alleged examples of her conduct that appeared after the plaintiff's complaint was filed were improper. Nor were any of her alleged statements initiated by Cheryl Darcy and confirmed by George Sirrine and Dorothy McAleer ever specifically discussed with her other than the gun in handbag allegation by Brian Gough, which discovery indicates surfaced via an alleged discussion with Beau Emory Lifsey more than one year prior to the termination of the plaintiff's employment.

**Plaintiff's Interrogatory No. 5**

Defendant counsel's statement that we are not aware of any such document, referring to the plaintiff request for a copy of the defendant's Corporate Personnel Policy related to administration of employee disciplinary action, does not mean that such documentation does not exist. Therefore the plaintiff will continue to request a copy until the defendant provides a copy of the requested information or provides a statement that the defendant Corporate Personnel Policy does not include any provision for or procedure for the application of employee disciplinary action.

**Plaintiff's Interrogatory No. 6**

As stated previously the plaintiff does not believe that any data that has been requested should be determined to be protected by attorney client privilege and or work product. All of the information that the plaintiff has been seeking during discovery that has been refused has either been revealed through discovery data already provided or has established an important relationship to the plaintiff's complaint.

The plaintiff believes at this time that enough information exists 1) that she was slandered and defamed; 2) that she worked in a hostile, unmanaged, dysfunctional work environment where sexually explicit, improper and unwelcome

sexual improprieties were frequently expressed and that for a period of approximately eighteen (18) months an employee with a severe daily alcohol problem was allowed to work in the same room before the situation was corrected while several co-workers expressed concern regarding the problem; 3) that the plaintiff was retaliate against for challenging management and complaining about Cheryl Darcy's lack of timely processing of customer payments and the condom thrown in front of Fran Wilcox incident, and the letters that the plaintiff wrote to defendant management during March and April, 2004 challenging management's attitude and actions provided her; 4) that the plaintiff was discriminated against due to the fact that she was treated differently than several present or former employees, all members of the over forty (40) protected class, which is discriminatory and with the best collection results within her department and with perfect attendance, she was replaced soon after her termination by a woman under forty (40), approximately thirty (30) years younger than the plaintif; and 5) that her employment was wrongfully terminated based upon a series of untrue statements initiated by Cheryl Darcy with the assistance of George Sirrine and Dororthy McAleer alleging and suggesting potential criminal intent of the plaintiff in possessing guns and knives, mob connections and finding a terrorist to bring down an airliner untrue statements brought forth in collaboration with Penny Edwards. The plaintiff further believes that it would be difficult and possibly not possible to locate an employment related case heard previously in Federal Court including all of the items within this complaint that have been charged due to the interrelationships that exist in this case.

The plaintiff further contends that each count of her complaint when collectively considered supports the existence of wrongful termination of her employment where she was "singled out" and treated differently than other present and former employees of the defendant that have had **actual not alleged** disciplinary actions taken against them by the defendant which again represents discrimination applied to the plaintiff.

**Item No. 6(c) -** Defendant counsel's statement on page three (3) item 6(c): that even if your collections performance (which APC admits to be satisfactory) were relevant, APC is not obligated to agree with your opinion of yourself.

This is another item that continues to receive mention whereby the defendant appears to seem compelled to discredit my performance. It almost appears as though the defendant is not capable of verifying factual information regarding my performance.

The importance of this matter is simply this, the defendant's Corrective Action procedure states that things such as employee performance and attendance records should be given consideration when applying the Corrective Action procedure to employees. Since the employee did not miss one day of work in two and one-half

years and her performance at the end of the fourth quarter of 2003 and at the end of the first quarter of 2004 was anywhere from three (3) to ten (10) times better than her other co-workers with similar sized account assignments, an interesting question is posed as to why she was not accorded consideration of application of the Corrective Action procedure rather than termination? Since no record of existence of employee counseling regarding problems caused exists and the basis, (reasons specifically stated for the problems she caused within her department), are all alleged, with evidence of contradictory and untrue statements existing relating to employee statements, this situation again supports that the plaintiff was discriminated against in the defendant decision to terminate her employment.

**Plaintiff's Request for Production No. 1**

The request for a copy of the defendant's Corporate Personnel Policy regarding the administration of employee disciplinary action was discussed previously. The copy of the Corrective Action procedure received does not satisfy this request. It is not believable that any U.S. corporation with annual sales in excess of one (1) billion dollars does not have such data within their corporate personnel policy manual. This request can be settled by 1) the defendant's statement under oath by Brian Gough that the defendant does not have such a policy or anything similar in addition to the Corrective Action procedure, or by 2) the defendants forwarding of the requested policy data.

**Plaintiff's Request for Production No. 16**

The plaintiff objects to the defendant's reasoning that documents related to Cheryl Darcy are not relevant and the plaintiff will pursue whatever needs to be accomplished to pursue obtainment of a formal Court Order requesting that this information be provided. The plaintiff considers the personnel file data related to the tuna fish sandwich smashing in face incident as being as important as any fact or event in this complaint and the plaintiff considers the provision of data related to this event as critical whether or not it appears in Cheryl Darcy's file or George Sirrine's. It should not be considered or Court judged as protected because the plaintiff can provide employee witnesses to testify that Cheryl Darcy personally initiates discussion of the event periodically herself.

The date of the tuna sandwich smashing occurrence has significant relevance in the plaintiff's case because if and when it is established that Cheryl Darcy has received a type of "protected status" where she is immune from any type of severe disciplinary action this becomes a major point in the plaintiff's contention regarding discriminatory treatment as compared to others.

George Sirrine's several conversations regarding scores of complaints against Cheryl Darcy and that "nothing can be done" in addition to her statement of doubtful validity that Beau Emory Lifsey told her that the plaintiff showed him her handgun more than one year prior to this allegation coming forth as a primary alleged fact of the defendant leading to all of the other defamatory and slanderous statements related to the plaintiff's mob involvement and Darcy's role in bringing this and most of the other defamatory allegations forward is sufficient reason to request and if necessary obtain a court order to obtain copies of everything in Cheryl Darcy's file relative to her workplace behavior, personal integrity and character.

**Summation**

In summary, the plaintiff believes the defendant to have knowingly and intentionally suppressed the provision of information that could have detrimental effect on the defendant response to this case. The plaintiff further contends that the defendant's actions against her were based upon a series of lies, initiated by Cheryl Darcy who was joined by George Sirrine and Dorothy McAleer in bringing forward the false, variable statements that resulted in serving as the primary defendant's alleged statements that were the basis for the defendant primary reason for claiming that the plaintiff caused problems with co-workers in the workplace which served as the defendant's main reason for the termination of employment.

The plaintiff believes that her employment at APC was terminated primarily, based upon her causing alleged problems with her co-workers which were for the most part based upon statements initiated by Cheryl Darcy who was joined in this collaborated effort by George Sirrine and Dorothy McAleer. Cheryl's Darcy's several statements that the plaintiff's alleged comments were witnessed by several co-workers **never contained any names** which further contests the truthful nature and credibility of Cheryl Darcy.

The defendant counsel statement inferring that the plaintiff's case is not against Cheryl Darcy, George Sirrine and Dorothy McAleer but the defendant. This is understood, however, when these three individuals appear to have initiated and carried forward the primary allegations regarding the plaintiff's alleged behavior leading to her employment termination, her complaint is properly focused upon the personal honesty, character as well as any relevant disciplinary action accorded each. As agents of the defendant in collaboration with their manager, Penny Edwards, the plaintiff believes that these individuals as agents of APC are primarily responsible for the events leading to her employment termination.

In the first paragraph of page three (3) of the defendant counsel February 3, 2006 letter to the plaintiff, defendant counsel states, Nevertheless, if you can show that your co-workers were involved in situations that are similar in all relevant respects to your situation and articulate how, in light of the existing record, your co-workers' treatment in those similar situations supports your age or retaliation claims, we will reconsider our position. The plaintiff believes that this letter establishes the necessary foundation to achieve this along with the discovery data discussed in this letter but not yet provided. In addition to the age discrimination claim receiving the requested information will establish the fact that the plaintiff was discriminated against by being treated differently than several other present or former employees in employee disciplinary related actions, some of a more severe nature than that alleged against the plaintiff.

The plaintiff further suggests for defendant counsel consideration, which she has verbally suggested to counsel previously, that if you have not yet conducted detailed questioning of Cheryl Darcy, George Sirrine and Dorothy McAleer regarding the specific statements they have made regarding their allegations made regarding the plaintiff, it would be wise to do. If this has not been done yet, I believe that if and when you do what is suggested, because if this matter has to go to trial for settlement, when present and former employees are called to testify to the validity of the alleged statements of the plaintiff, the plaintiff is confident that all of the most serious allegations made against her, will be proven not to be true.

The plaintiff further believes that any resultant damages awarded and sanctions applied against the defendant for carrying forward this "farce" due to wasting valuable Court time also can not be expected to be a positive event regarding the corporate image of the American Power Conversion Corporation.

If defendant counsel believes that the prior mentioned circumstance are not possible, I also suggest that you have a detailed discussion with Brian Gough regarding the matters mentioned in this letter. The plaintiff believes that Mr. Gough knows the **truth,** in most of these matters, but for some reason is not willing to come forth to acknowledge this fact.

It would be helpful if the defendant counsel would respond to the information requests made in this letter as soon as possible and if the defendant response does not change from the February 3rd letter, in regard to providing the requested information, an email to the plaintiff stating such would be appreciated.

Sincerely,

Natalie Gill Bartlett
pro se plaintiff