**Natalie G. Bartlett** **45 Lakeside Drive, Narragansett, RI 02882**
**phone 401 - 782-1398** **email pchathamgrp@aol.com**

February 16, 2006

Attorney Gardner H. Palmer, Jr.
Rodio & Brown, Ltd.
91 Friendship Street
Providence, RI 02903

Dear Attorney Palmer:

This letter responds to your letter of February 10, 2006 that responds to the plaintiff's letter to the defendant's counsel of February 9, 20006.

The plaintiff considers the defendant's responses to plaintiff's Interrogatories No. 4, No. 5, No. 6 and the defendant's response to Request for Production No. 1 and No. 16 as inadequate and non-responsive which represents an attempt by the defendant to suppress data critical to the support of the plaintiff's complaint.

Defendant counsel reference to whether or not the defendant should withdraw its objection to Interrogatory No. 4 and Request for Production No. 16 mentioned in Defendant Counsel's letter of February 3, 2006 is not considered relevant by the plaintiff as she will continue to pursue provision of the requested data due to its importance in proving that the plaintiff was provided discriminatory treatment as compared to other APC, protected class, over age forty (40) employees in application of disciplinary action.

The plaintiff does not believe that she must prove that the situation discussed in Interrogatory No. 4 and Request for Production No. 6 are similar to the **alleged, unproven situations she is accused of** that served as the primary reasons for the termination of her employment.

Again, as previously stated several times, which the defendant apparently refuses to consider, discovery has proven that Cheryl Darcy, assisted by George Sirrine and Dorothy McAleer are the primary defendant employees making the alleged charges against the plaintiff that the plaintiff caused certain alleged problems with her co-workers that served as the primary reasons for the termination of her employment.

The plaintiff believes that the **collaboration between Darcy, Sirrine and McAleer** began with the Darcy accusation of the plaintiff carrying a handgun in her handbag which surfaced on or about April 1, 2004, which originated from a Cheryl Darcy claim that Beau Emory Lifsey told her that the plaintiff showed him her handgun.

EXHIBIT NO. 2

Why on or about April 1, 2004 did this allegation surface when Lifsey had left APC more than one (1) year prior to Darcy's claim? This in itself poses an interesting question relative to the distinct possibility of collaboration existing against the plaintiff and the personal integrity of Cheryl Darcy.

This alleged incident, the resultant handbag search, the Rhode Island Mob related accusations and the desire to find a terrorist to bring down an airliner accusations are all preposterous claims by these three APC employees of questionable integrity and character who apparently took it on their own initiative to disparage and slander the plaintiff in order to build the primary alleged substance of the defendant's case to justify termination of the plaintiff's employment. George Sirrine's claim that the defendant showed him her black laced panties only added to other examples of the **perpetrated farce** that the defendant has brought forward against the plaintiff that the plaintiff believes represents potential justification for being considered to being thrown out of Court.

Why should the plaintiff have any trust regarding what the defendant is willing to consider when the integrity and honor of APC Corporation is already in question by allowing the statements of their employees as their agents, of Darcy, Sirrine and McAleer come forward that have already been proven in discovery and their related statements against the plaintiff to be of questionable validity when considering the Lifsey time of termination, the outside counsel initial statement to the EEOC regarding the alleged bringing down an airliner and the Penny Edwards statement regarding Karena Burnham complaining about the plaintiff related to Karena's date of leaving her work at APC?

McAleer has already discredited herself regarding any of her statements due to her provable lack of integrity due to her excessive daily smoking breaks violating APC policy and her APC paid breakfasts for years.

Why is it apparent that APC and its counsel is unwilling to face or discuss any of these situations mentioned in the previous several paragraphs?

Defendant counsel's comment regarding the disciplinary history of co-workers being in the same protected class as the plaintiff is to the plaintiff's benefit. The histories requested of George Sirrine, Cheryl Darcy, Mary Silvia, Fran Wilcox, Beau Emory Lifsey and Deborah Robars will prove that the plaintiff was treated differently than her other co-workers, which is in violation of Title VII.

The addition of Deborah Robars in the Karena Burnham, "attempted to hit Karena with her auto video" is permitted under discovery procedure. The plaintiff believes this situation to be an important incident in her complaint. Karena Burnham recently told the plaintiff that she believed that Deborah Robars did not receive any disciplinary action resulting from this parking lot incident reported in the plaintiff's

letter to you of February 9, 2006. If the video ( if not destroyed by the defendant) or APC or former employee statements that saw the video testify that Robars action was threatening and it is determined that no disciplinary action was taken against Robars, this incident could be viewed as a far more serious one than any of the alleged statements of the plaintiff that supposedly disrupted or caused problems with her co-workers within the workplace.

Your point regarding discovery being closed as of November 30, 2005 when defendant counsel in your letter of December 22, 2005 responding to the plaintiff's discovery request letter of November 25, 2005 loses all credibility when you state that you anticipate being able to send to the plaintiff APC's Supplemental Answers to Interrogatories shortly. This is evidence of lack of a good faith effort when this data was received by the plaintiff on or about January 20, 2006 at which time the defendant counsel had already submitted a Motion to Dismiss for Court consideration.

Your point is further contested by the Judge ordering the plaintiff to submit the defendant requested medical records within thirty (30) days of the January 23, 2006 Court hearing and the fact that the Judge advised the plaintiff to try to work out with the defendant counsel the discovery items still being requested of the defendant by the plaintiff, and if this item can not be worked out to the plaintiff's satisfaction that a Motion to Compel should be entered for consideration. I guess this is where we are at this juncture.

Your point regarding the relevance of any APC disciplinary action taken against any present or former APC co-workers of the plaintiff that were accorded application of the defendant's Corrective Action Process or the defendant's Corporate Personnel Policy related to employee disciplinary action will prove that the plaintiff received discriminatory treatment in the termination of her employment as compared to certain other present and former co-workers of the protected class.

Defendant counsel requests facts and names regarding former plaintiff co-workers.

Mary Silvia told the plaintiff personally that she had been placed on formal warning twice during the time that the plaintiff was employed at APC. George Sirrine also told the plaintiff that Mary Silvia's file contained many situations regarding complaints and disciplinary action taken against her.

In Addition to the tuna fish sandwich and throwing condom incidents, George Sirrine told the plaintiff that numerous verbal and formal complaints had been made against Cheryl Darcy for her frequently sexually improper comments unwelcome by other co-workers. The plaintiff further believes that as the primary initiator and possible instigator of the fabricated statements alleged of the plaintiff that caused workplace problems, when proven that Lifsey did not tell Darcy that the plaintiff showed him

her handgun more than the one (1) year prior to her reporting of the incident, an interesting question for Cheryl to explain is why did she come forth with this alleged item on April 1, 2004? Why was Beau Emory Lifsey's daily inebriation not addressed for more than eighteen (18) months when all members of Penny Edwards department were aware of the situation?

Defendant counsel's statement that the plaintiff testified that she was retaliated against for challenging Penny Edwards related to her dispute over her March 22, 2004 Performance Appraisal and her (Edwards) management style and for no other reason is another of the defendant counsels attempt to twist selective comments of the plaintiff in favor of the defendant. The plaintiff has also stated numerous times throughout this complaint that her belief is she was retaliated against by all APC management involved with her during March and April 2004 regarding the meetings with these managers and the resultant letters that she wrote to them challenging their manner and reactions to her during these meetings.

The plaintiff's Request for Production of item No. 1 which at this time has been refused by the defendant four (4) times is an important item, which as previously suggested, Brian Gough needs to swear by oath that a Corporate Personnel Policy regarding the administration of employee disciplinary action does not exist or APC needs to provide the documentation related to this request, which is different than the copies related to the APC Corrective Action Process. For whatever the reason APC must consider provision of this information as potentially damaging to them.

The plaintiff Request for Production of item No. 16 still remains unsatisfied. The defendant's continuing refusal to provide the requested Interrogatory and Request for Production items is deemed as being of critical importance to the plaintiff's complaint and the plaintiff will proceed forward with a Motion to Compel or other potential means of securing a Court Order to obtain the requested information.

The plaintiff considers the defendant's lack of willingness to provide the requested discovery data as well as the items mentioned that challenge the integrity of Cheryl Darcy, George Sirrine and Dorothy McAleer regarding the factual nature and inconsistency of their statements against the plaintiff along with the farce that these APC employees have perpetrated represents support to the plaintiff's Motion for Summary Judgment against the defendant.

Sincerely,

Natalie G. Bartlett
pro se plaintiff