91 FRIENDSHIP STREET
PROVIDENCE, RHODE ISLAND 02903
TELEPHONE: 401-274-4040
FACSIMILE: 401-274-4099
WWW.RODIOBROWN.COM

*Gardner H. Palmer, Jr.*
gpalmer@rodiobrown.com

Rodio & Brown, Ltd.
COUNSELLORS AT LAW

February 3, 2006

Mrs. Natalie Gill Bartlett
45 Lakeside Drive
Narragansett, RI 02882

Re: *Bartlett v. American Power Conversion Corporation, C.A. No. 05-084 ML*

Dear Mrs. Bartlett:

This letter responds to your January 24, 2006 letter requesting supplemental discovery responses from APC. As you know, APC has already provided initial and supplemental responses to your Interrogatories, Request for Documents and Request for Admissions. We are also today filing a response to your Motion for Summary Judgment which appears to address discovery issues, rather than the merits of the case.

It is difficult to understand what you believe is deficient in APC's discovery responses as stated on page 1 of your letter because you do not specifically identify the title and paragraph number of each discovery request you believe is lacking (e.g., Interrogatory No. X or Document Request No. Y). You appear also to misstate the bases for certain objections that APC has lodged to individual requests, increasing the difficulty of responding.

APC also notes that your attempt to introduce new "situations" supposedly supporting your hostile work environment claim is improper. Discovery closed in this case on November 30, 2005, over two months ago. APC took great pains in your deposition to flesh out each and every "situation" that supported each claim, including your hostile environment claim. On two separate occasions, I asked you if you had provided all of the incidents that make up your hostile environment claim. I advised you of the importance of providing all of the information supporting your claim and that APC was entitled to that information at the deposition. I offered to suspend the deposition so that you could have the time to adequately consider the issues. You declined and provided some additional testimony. I then asked again at the conclusion of the first session of your deposition if you had provided *all* of the information relative to your hostile environment claim:

Q. Okay. Anything else that makes up your hostile environment claim?
A. No.
Q. You're comfortable?
A. Right.

Q. You've given it as much time as you need to think about –
A. Right.
Q. –all of the incidents and you're satisfied that there are no other incidents that are part of your hostile environment –
A. Right.
Q. –claim, is that right?
A. Right.

When we met the following week to complete your deposition, you did not disclose any additional facts even though you had ample time to consider your prior testimony.

APC notes parenthetically that at least one of the incidents appears to have been unknown to you until recently. We do not understand how that can be evidence that *you* were subjected to a hostile environment. We also do not understand how either incident is evidence that you were subjected to a hostile environment on the basis of some protected classification, leaving aside your testimony in which you admitted that the claimed hostile environment was not because of your membership in any protected class.

**Plaintiff's Interrogatory No. 4:**

You appear to contend that the disciplinary histories of Cheryl Darcy, Dorothy McAleer and George Sirrine are relevant to your claim because they were allegedly the "primary originators" of the defamatory information that APC relied on in terminating you. Your defamation claim is stated against APC, not Darcy, McAleer and Sirrine. We do not see the relevance of your co-workers' disciplinary history to your defamation claim against APC.

Perhaps you can explain how knowing the disciplinary histories of Cheryl Darcy, Dorothy McAleer, George Sirrine and any other co-workers to whom your letter might be referring helps you prove any of your substantive discrimination claims. It is not enough to show that a co-worker may have received different treatment than you. You must also show that the people and situations were similar in all relevant respects and you must show that any dissimilar treatment was because of your membership in some protected class. Your co-workers are all in the same age protected class as you are. And you have testified under oath that any "retaliation" you experienced was due to your challenge of APC management, not because of any protected activity you engaged in. Since you do not disclose the "specific situations" about which you allegedly have knowledge, it is difficult to respond more fully.

To the extent you seek information about discipline of Cheryl Darcy for the alleged sexual impropriety you reported (the lunchroom condom incident), we have produced the Emily Mohrfeld Memo indicating that she was counseled for her conduct.

On the state of the record, we do not see how you can establish the relevance of these disciplinary histories, if any even exist. Nevertheless, if you can show that your co-workers were involved in situations that are similar in all relevant respects to your situation and articulate how, in light of the existing record, your co-workers' treatment in those similar situations supports your age or retaliation claims, we will reconsider our position.

**Plaintiff's Interrogatory No. 5:**

Apart from your apparent belief that APC has not fully responded to your Document Request for APC's disciplinary policy, this request appears to do nothing more than challenge the truth of APC's Interrogatory Answers. That you do not like or believe APC's answers does not make them deficient. As for your "belief" that there exists a policy at APC, apart from its Corrective Action policy, that "covers the administration of disciplinary action in regard to how to apply the progressive steps of disciplinary action," we have previously advised you that we are not aware of any such document. Perhaps you can disclose the facts that you have that underlie your "belief" that such a document exists and that APC is withholding it from you, as you have repeated to the Court several times.

**Plaintiff's Interrogatory No. 6:**

**6(b):** As with your November 25, 2005 letter on this issue, you do not specify the additional information that you seek, nor do you attempt to overcome APC's objection that the information you have requested is protected by attorney client privilege and work product. In any event, you have testified under oath that, in your exit interview with Ms. Sutherland and Mr. Gough, you were not told that your termination was because APC was forced to eliminate a Collections Representative position:

> Q. And there was nothing said to you in your exit interview about the need to eliminate one position within the department, was there?
> A. I don't believe so, no.

**6(c):** Your issue with APC's Answer here appears to be that you want APC to admit that you were the top performer in the department. Even if your collections performance (which APC admits to be satisfactory) were relevant, APC is not obligated to agree with your opinion of yourself.

**6(e):** You have not pointed out how APC's response does not comply with its discovery obligations; only that you do not agree with APC's answer. Rule 37 conferences and motions to compel are not intended to argue the merits of the case. We do not see any basis for APC to amend or supplement its Answer.

**Plaintiff's Interrogatory No. 7:**

Here again, you take issue with the substance of APC's response and want to argue the merits of the Answer. That you disagree does not make the answer unresponsive or deficient. APC believes that it has comprehensively responded to this Interrogatory.

**Plaintiff's Interrogatory No. 10, Item a.3:**

APC believes its response to this Interrogatory meet its discovery obligations. We again point out that your belief that the information provided is a "preposterous farce" does not meant the answer does not satisfy APC's discovery obligation.

**Plaintiff's Request for Production No. 1:**

We have addressed this issue in prior discovery responses and again under our response above to your Interrogatory No. 5 contention. We long ago produced APC's Corrective Action policy and are not aware of any document such as the one you believe exists.

**Plaintiff's Request for Production No. 16(?):**

We assume that the reference in your second to last paragraph pertaining to Cheryl Darcy means to specify Document Request No. 16. We have discussed above in our response to your request relating to Interrogatory No. 4 why we do not believe documents relating to Cheryl Darcy are relevant, with the possible exception of the Emily Mohrfeld Memo relating to your report of the lunchroom condom incident. We have already produced that document to you. As for the tuna fish sandwich incident, we do not believe that incident is relevant to any of your claims. It occurred long before you were ever at APC, did not involve you in any way and your understanding of it is based on hearsay.

Please let me know if you would like to discuss any issues relating to this matter.

Very truly yours,

Gardner H. Palmer, Jr.

GHP, Jr.

cc: Jeffrey Giguere, Esq.