**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **Natalie Gill Bartlett** | : | |
| **Plaintiff** | : | |
| v. | : | **CASE: CA 05 084 ML** |
| **American Power Conversion Corporation** | : | |
| **Defendant** | : | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S OPPPOSITION**
**TO PLAINTIFF'S MOTION TO COMPEL**

The plaintiff Natalie Gill Bartlett object's to the defendant's opposition to the plaintiff's Motion to Compel for the following reason's stated in the plaintiff's accompanying memorandum. The defendant respectfully requests that the Court deny the Defendant's opposition to the plaintiff's Motion to Compel and that the Court order the Defendant to provide the data requested by the plaintiff to the plaintiff.

Natalie Gill Bartlett
vs.
American Power Conversion Corporation
C.A. No. 05-084ML



Natalie Gill Bartlett pro se plaintiff

45 Lakeside Drive
Narragansett, RI 02882
(401) 782-1398

Date: May 2, 2006

**CERTIFICATION**

Gardner H. Palmer,Jr.
RODIO & BROWN, LTD.
91 Friendship Street
Providence, RI 02903

I hereby certify that I sent a copy of the within document to the party listed above by regular, first class mail, postage prepaid on the 2nd day of May, 2006

Natalie G. Bartlett pro se plaintiff

**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **Natalie Gill Bartlett** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | |
| v. | : | **CASE: CA 05 084 ML** |
| | : | |
| | : | |
| **American Power Conversion Corporation** | : | |
| **Defendant** | : | |

**PLAINTIFF'S MEMORANDUM IN RESPONSE TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**

The plaintiff Natalie Gill Bartlett object's to the defendant's opposition to the plaintiff's Motion to Compel for the reason's stated in the plaintiff's memorandum. The defendant respectfully requests that the Court deny the Defendant's opposition to the plaintiff's Motion to Compel and that the Court order the Defendant to provide the data requested by the plaintiff to the plaintiff.

**I. Plaintiff's believes the Defendant to Purposely be Evasive in Response to all Items Requested in Plaintiff's Motion to Compel.**

All items requested of the Defendant by the Plaintiff believed to be factually in support of her complaint against the defendant have not ever been answered specifically, only in generalities such as not being relevant. This fact began with the Defendant's First Response to Plaintiff Interrogatories, where the Defendant violates

Federal District Court of Rhode Island Rules that stated, that objections to interrogatories required a separate schedule providing a comprehensive reason for each objection. This requirement was met by the Plaintiff but not the Defendant. The plaintiff in a good faith, cooperative effort fully disclosed the specific responses to all defendant discovery requests as well as providing detailed explanations to why any objections were presented. In discovery the Plaintiff was never evasive nor did she hide behind such generalities as not relevant, presents undue hardship on defendant, employee confidential, etc.

**II. Plantiff believes her Motion to Compel is in Compliance with Federal and the Local Rule Equivalent of Rule 37(a) in Opposition to the Defendant's Claim.**

In interest of keeping her Motion to Compel as brief as possible, the Plaintiff did summarize several of the defendant various responses which she believed to be repetitive or redundant, to which she believed was not damaging to the meaning of the Defendant's response.

**III. APC has adequately responded to the discovery that Plaintiff seeks to compel either by way of answer or well-founded objection**

Plaintiff is in total disagreement with the Defendant's contentions as stated in their response marked item no. III. The plaintiff further believes that since all relevant details regarding this item are spelled out in the plaintiff's Motion to Compel and the Defendant's Opposition to the Plaintiff's Motion to Compel, that repetition of all of data contained in the Motion and the Defendant's Opposition is redundant and tends

cloud the issues at stake for the plaintiff. The plaintiff further claims that the defendant is evasive in its unwillingness to provide discovery data the plaintiff believes to be critical to her complaint and has chosen to purposely withhold the requested data due to the potential damage that provision of the requested data could provide to their defense of the plaintiff's complaint.

The plaintiff needs factual evidence in order to have a fair opportunity to prevail in her complaint and she believes that lack of provision of the data requested in her Motion to Compel will unfairly prejudice the plaintiff in her trial preparation.

The plaintiff further claims that the defendant continually throughout discovery hides behind numerous generalities regarding the relevance of the requested data which is not consistent with a cooperative, good faith effort required by the Court.

**IV. Plaintiff's Contention of Facts in Support of Plaintiff's Motion to Compel and Response to Defendant's April 21st, 2006 Opposition to Plaintiff's Motion as of May 2nd, 2006.**

**IV. a.** Evidence of a collaboration against the Plaintiff to disparage her and to create a case to serve as the primary basis for the justification of the termination of her employment began with the Cheryl Darcy statement reported on page No. 22 of the Defendant's Supplemental Response to First Set of Interrogatories of Plaintiff dated 1/19/06 included as exhibit no. 1 stated: **A former employee, Beau-Emory Lifsey, told the group at the table that Plaintiff not only told him that she carried a small handgun but she showed it to him.**

**Plaintiff believes this statement to be a provable lie which is supported by the fact that Lifsey had left the employ of APC more than one year prior to the initial internal reports and statements made against the plaintiff by Cheryl Darcy, George Sirrine and Dorothy McAleer.**

Of further significance, including the alleged Lifsey statement, eleven (11) alleged statements were made against the plaintiff, six (6) by Cheryl Darcy, three (3) by George Sirrine and two (2) by Dorothy McAleer that are untrue, several slanderous in nature that the plaintiff believes in total, served as the primary work group events that served as the basis for the termination of the plaintiff.

Exhibits included as No. 2.a. through 2.e. These APC internal emails or summary of employee statements made to APC Human Resources include:

March 31, 2004 Cheryl Darcy email alleging plaintiff **access to guns and knives** and people like the plaintiff **often turn to violence.**

April 1, 2004 Cheryl Darcy email alleging plaintiff **carries a pistol in her purse.** Darcy also stated that a department member told her husband if anything ever happens to her **look toward the plaintiff as suspicious.** Darcy further stated that the plaintiff bragged to several people that **she has connections with the mob** and **has a person who will do her bidding if she asks.**

April 28, 2004 Brian Gough statement that he had received a complaint from someone indicating that the plaintiff was overheard commenting that **she keeps a gun in her handbag. (plaintiff believes the someone to be Cheryl Darcy).**

May 5, 2004 Dorothy McAleer statement, **Natalie has made comments about Natalie's connection to the mob and that she knew people that could make someone disappear.** The plaintiff believes this to be another mistruth that she is alleged to have made. Again, no specifics regarding to whom this alleged statement was made.

George Sirrine told Dorothy that he had heard **Natalie make the comment that, Natalie wish she knew a terrorist that would blow up the plane that Dorothy takes to and from Florida.** Again a totally preposterous misrepresentation that is refuted by APC outside statement in the APC response to the plaintiff's EEOC complaint. An example of the continual twisting of wording and inconsistency found throughout employee statements made in exhibits, 2.a. through 2.e.

May 6, 2004 George Sirrine statement. George explained that **Natalie has made some crazy comments in the past about connections she may have, certain individuals she knows. George did confirm that Natalie did state that she did want to know which plane Dorothy McAleer flies to and from Florida on and to have terrorists attack it.**

George also stated that, he does believe that Natalie does have some issues and that she is not stable. This defamatory statement comes from an APC employee who previously smashed a tuna fish sandwich in an APC employee's face and threw a punch at another APC employee.

The defendant has previously stated that the plaintiff's complaint is against APC and its management, not against individual employees. The plaintiff refutes this statement due to the fact that significant enough evidence exists that Cheryl Darcy was the primary initiator of employee statements that led to the plaintiffs termination. Cheryl was immediately joined by George Sirrine and Dorothy McAleer once the alleged actions of the plaintiff were initiated by Darcy.

The plaintiff believes that it is significant in her complaint that only Sirrine, McAleer and Darcy came forward with the complaints against the plaintiff and that no other employees as witnesses to what the plaintiff is characterized by APC as causing problems with other APC employees and being hostile. All references to these acts are either general, non-specific statements by management or general statements of Darcy and McAleer that do not name other employee witnesses to what the plaintiff believes to be the critical items that motivated her termination.

The plaintiff's request for any further information regarding Dorothy McAleer is withdrawn. Dorothy McAleer due to excessive daily smoking breaks above what APC policy allows and years of daily benefitting from an APC paid breakfast, her dishonesty has cost APC several thousand hours of lost work time and thousands of dollars of unjustified overtime pay. Several former employees can verify these lack of integrity breaches of McAleer at trial.

The plaintiff also withdraws its request for any further information regarding George Sirrine. The previously mentioned smashing of the tuna fish sandwich and throwing of a punch incident is well known throughout APC and his slanderous statement in exhibit 2.3. that "she (the plaintiff) is not stable" challenges his personal credibility as well as the alleged statements that he is alleged to have made against the plaintiff.

The plaintiff believes that Cheryl Darcy is the primary originator of the alleged statements of the plaintiff that served as the basis for APC management statement of the plaintiff causing problems with others, which served as the primary basis for termination of her employment. At least, these statements initiated by Cheryl via Dorothy McAleer and George Sirrine, are the only alleged situations that mention specific actions alleged of the plaintiff.

APC has not refuted the plaintiff claim that George Sirrine told the plaintiff several times during the plaintiff's employment when she complained about Cheryl Darcy's frequent, unwanted, improper, sexually explicit comments that nothing could be done about her. This infers that Cheryl benefits from some type of protected status provided by APC Management. Since it is apparent that Cheryl was the primary initiator and mover against the plaintiff, and that there is indication of lack of authenticity of all claims against the plaintiff, that the defendant should be required by the Court to provide copies of all disciplinary matters contained in Cheryl Darcy's file in addition to the throwing of the condom matter. The statement of Cheryl included in exhibit No. 1 that former employee Beau-Emory Lifsey told her that the plaintiff showed him her handgun when Beau Lifsey had left the employ of APC more than one year prior to the statements made by Darcy, McAleer and Sirrine raises further questions about the truth of all related statements to the plaintiff's alleged gun carrying, ties to the Rhode Island mob, have things taken care of and other related statements of these three employees and the unnamed others to whom are referred to as witnesses.

This more than one year lapse of the alleged conversation between Lifsey and Darcy raises some interesting questions regarding whether or not Summary Judgement against the Defendant may be justified and the plaintiff also believes supports her continuing request for copies of all disciplinary related documentation contained in Cheryl Darcy's personnel file.

**Plaintiff's Summary**

The plaintiff believes that the inconsistencies and related factors pointed out in the APC employee statements regarding the plaintiff, alleged to have occurred represent a travesty and a waste of court time and expenditures and that the defendant has purposefully ignored or refused to provide certain discovery items the plaintiff believes that are important in progressing her complaint.

The plaintiff further believes that a type of conspiracy exists, initiated by Cheryl Darcy, joined by George Sirrine and Dorothy McAleer under the authority of their department manager, Penny Edwards. This contention of the plaintiff may seem somewhat unusual but she believes under the circumstances that exist, she believes that the collective events surrounding the termination of her employment support the existence of a collective, pre-meditated collaboration existed.

The continual avoidance of the defendant to specifically address the existence of a Corporate Personnel Policy regarding the administration of employee disciplinary

action is believed by the plaintiff to be of importance. The Corrective Action Process included as exhibit No. 3 is simply a listing of words that does nothing to explain how to administer such things as employee warning and probation procedures leading to employee termination, in many employee situations themselves are often comprehensive regarding their proper administration. Proper administration of these procedures is important when employment and careers of employees are often at stake. It is hard to believe that the Defendant does not have detailed procedures regarding how to administer items of importance such as these.

Natalie Gill Bartlett pro se plaintiff

45 Lakeside Drive
Narragansett, RI 02882
(401) 782-1398

Date: May 2, 2006

**CERTIFICATION**

Gardner H. Palmer,Jr.
RODIO & BROWN, LTD.
91 Friendship Street
Providence, RI 02903

I hereby certify that I sent a copy of the within document to the party listed above by regular, first class mail, postage prepaid on the 2nd day of May, 2006.

Natalie G. Bartlett pro se plaintiff