UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

NATALIE GILL BARTLETT,
Plaintiff,

v. CA 05-084 ML

AMERICAN POWER
CONVERSION CORP.,
Defendant.

MEMORANDUM AND ORDER

This case is before the Court on cross-motions for summary judgment filed by Plaintiff, Natalie Gill Bartlett ("Bartlett" or "Plaintiff"), and Defendant, American Power Conversion Corporation ("APC" or "Defendant"), pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons stated below, Plaintiff's motion is denied and Defendant's motion is granted.

I. Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if the pertinent evidence is such that a rational fact finder could render a verdict in favor of either party, and a fact is "material" if it "has the capacity to sway the outcome of the litigation under the applicable law." Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995) (citing Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

The moving party bears the burden of showing the Court that no genuine issue of material fact exists. Nat'l Amusements, 43 F.3d at 735. Once the movant has made the requisite showing, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The Court views all facts and draws all reasonable inferences in the light most favorable to the nonmoving party. Reich v. John Alden Life Ins. Co., 126 F.3d 1, 6 (1st Cir. 1997) (citation omitted).

Cross-motions for summary judgment "simply require [the court] to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." Barnes v. Fleet Nat'l Bank, N.A., 370 F.3d 164, 170 (1st Cir. 2004) (internal quotation marks and citation omitted). The legal standard for summary judgment is not changed when parties file cross-motions for summary judgment. Adria Int'l Group, Inc. v. Ferre Dev., Inc., 241 F.3d 103, 107 (1st Cir. 2001). "The court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." Bienkowski v. Northeastern University, 285 F.3d 138, 140 (1st Cir. 2002) (internal quotation marks and citation omitted).

## II. The Plaintiff's Filings

D.R.I. LR Cv 56(a)(1) provides that "[i]n addition to the memorandum of law required by LR Cv 7, a motion for summary judgment shall be accompanied by a Statement of Undisputed Facts that concisely sets forth all facts that the movant contends are undisputed and entitle the

movant to judgment as a matter of law." D.R.I. LR Cv 56(a)(1). In addition, "[e]ach 'fact' in a Statement of Undisputed Facts shall be set forth in a separate, numbered paragraph and shall identify the evidence establishing that fact, including the page and line of any document to which reference is made . . . ." D.R.I. LR Cv 56(a)(2). The Court may then assume these facts are admitted to exist "unless expressly denied or otherwise controverted by a party objecting to the motion." D.R.I. LR Cv 56(a)(3). Plaintiff has failed to comply with these requirements.

Plaintiff's motion for summary judgment was filed with this Court on January 17, 2006. Plaintiff failed to include a separate memorandum of law, as required by D.R.I. LR Cv 7(a), and a separate Statement of Undisputed Facts, as required by D.R.I. LR Cv 56(a)(1). Additionally, Plaintiff has not set forth each fact in a separately numbered paragraph, nor has she identified the evidence establishing each fact. D.R.I. LR Cv 56(a). "Valid local rules are an important vehicle by which courts operate. Such rules carry the force of law, and they are binding upon the litigants and upon the court itself." Air Line Pilots Ass'n v. Precision Valley Aviation, 26 F.3d 220, 224 (1st Cir. 1994) (citations omitted). Plaintiff's failure to comply with these requirements results in this Court adopting the facts provided by Defendant in its Statement of Disputed Facts.[1]

Defendant also filed its motion for summary judgment on January 17, 2006. Plaintiff's response was filed January 30, 2006. D.R.I. LR Cv 56(a)(4) provides that "[a]n objecting party also may file a Statement of Disputed and/or Undisputed Facts setting forth disputed facts and/or

---

[1] The Court has accorded Plaintiff some latitude given her pro se status. See Mas Marques v. Digital Equip. Corp., 637 F.2d 24, 27 (1st Cir. 1980) (pro se papers should be read liberally). Pro se litigants, however, are not excused from compliance with procedural rules or substantive law. See Eagle Eye Fishing Corp. v. U.S. Dep't of Commerce, 20 F.3d 503, 506 (1st Cir. 1994).

additional undisputed facts that the objecting party contends preclude summary judgment." D.R.I. LR Cv 56(a)(4). Furthermore, "[a]ny denied or controverted fact must be supported by affidavit or other evidentiary materials." D.R.I. LR Cv 56(a)(4). In opposing summary judgment, "conclusory allegations, improbable inferences, and unsupported speculation," are insufficient to establish a genuine dispute of fact. Smith v. F.W. Morse & Co., Inc., 76 F.3d 413, 428 (1st Cir. 1996) (quoting Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)). Plaintiff's response to Defendant's motion for summary judgment is a sixteen-page document containing only her own unsupported beliefs, opinion, and innuendo. Her response fails to meet the requirements of D.R.I. LR Cv 56(a), and results in this Court adopting the facts provided by the Defendant in its Statement of Undisputed Facts. See Ruiz Rivera v. Riley, 209 F.3d 24, 28 (1st Cir. 2000) (finding in a similar context that "failure to present a statement of disputed facts, embroidered with specific citations to the record, justifies the court's deeming the facts presented in the movant's statement of undisputed facts admitted . . . .").

III. Facts

Bartlett was hired by APC on April 29, 2002, as an accounts receivable collections representative. At the time of hire, she was age sixty-one. Bartlett's supervisor, Penny Edwards ("Edwards"), then age fifty-one, was the principal decision-maker in her hiring. It is undisputed that there was a certain level of bickering and animosity between the female accounts receivable employees. During her time at APC and throughout this litigation, Bartlett frequently commented on her "significantly superior comparative performance," "flawless" personal

character, and "perfect conduct" relative to her co-workers and supervisor.[2]

On March 22, 2004, Bartlett received her annual performance review from Edwards. Bartlett took offense to any rating that was a "meets expectations" or "needs improvement," and challenged Edwards' assessments. During the review, Bartlett refused to focus on her own performance, instead she criticized the performance of others in her department. Bartlett also accused a female co-worker of making an inappropriate sexual remark several months earlier.[3]

Immediately following her review, Bartlett met with Edwards and Edwards' then supervisor, Brian Kelly ("Kelly"), to address the allegations of improper sexual conduct that Bartlett raised during her review. During this meeting, Bartlett wanted to focus on her perceived poor performance review rather than her allegation of sexual misconduct. It was Bartlett's belief

---

[2] Bartlett colorfully expressed her disdain for her supervisor and co-workers during her time at APC and throughout this litigation. Referring to her supervisor, Bartlett stated, "at APC I was dealing with a potato in the form of Penny Edwards so I had no expectations." (Pl. Depo. Vol. 2, p. 92, ll. 9-10). In response to her supervisor's email request to meet for Bartlett's performance review, Bartlett replied, "thanks but I would rather have a colonoscopy plus a gyn exam together with massive blood work . . . ." (Def.'s St. of Undisputed Facts, at 15). Bartlett stated that she didn't get along with a fellow employee; she had "no respect" for the employee. She further stated that the employee was "a very crude individual who wears a dirty wig every day . . . ." (Pl. Depo. Vol. 2, p. 111, ll. 11-13; p. 123, ll. 9-13). Bartlett believed one co-worker was "the lowest form of humanity." (Pl. Depo. Vol. 2, p. 26, ll. 7-8). She also referred to yet another co-worker as "a very nice man but pathetic." (Pl. Depo. Vol. 2, p. 110, ll. 23-24).

[3] At her March 22, 2004, performance review, Bartlett revealed for the first time an incident that occurred the prior November in the APC lunchroom. According to Plaintiff, several of the female accounts receivable employees, including herself, were eating lunch and discussing a co-worker's new boyfriend. Another employee removed a packaged condom from her purse, and threw it on the table, stating in effect, that the employee and her boyfriend would now need it. (Def.'s St. of Undisputed Facts, at 28). There is some dispute about how the women at the table reacted at the time. The employee who threw the condom maintains that the incident was intended and received as a joke. Bartlett contends that everyone at the table was shocked into complete silence.

that Edwards and Kelly thought she was too old to understand the humor in the improper sexual conduct. Neither Edwards nor Kelly made any comment to Bartlett to this effect during the meeting.

As promised, Kelly involved the Human Resources Department to investigate the incident Bartlett disclosed at her review. Bartlett met with Human Resources Director Brian Gough ("Gough"), and was informed that the incident had been investigated. Gough told Bartlett that the employee involved had indicated that she intended her action to be a joke. Gough also stated that he understood that Bartlett did not see it as a joke and that the employee had been counseled. As for the March 22, 2004 performance review, Gough told Bartlett that she could prepare her own rebuttal to Edwards' review and it would be included in her personnel file along with the review.

In the weeks leading up to Bartlett's termination, some of Bartlett's co-workers attributed heightened tension within the accounts receivable department to certain of Bartlett's alleged statements and conduct. In response to a statement from a co-worker who claimed that she had overheard Bartlett talking about carrying a pistol in her purse, APC performed a search of Bartlett's handbag. Bartlett confronted Edwards immediately after the search. She accused her supervisor of being the person who made the report and told Edwards that "someone would pay" for what Bartlett had been through. The same co-worker who reported hearing about the pistol also told APC that Bartlett had bragged about having connections to the "Rhode Island mob" and could pick up the phone and have certain situations taken care of. Another co-worker reported an incident in which Bartlett had asked, in substance, why can't you find a terrorist when you need

one to bring down an airliner, in reference to a co-worker who frequently flew to Florida on weekends to be with her husband.

On May 10, 2004, APC terminated Bartlett's employment. One of the primary decision-makers with respect to Bartlett's termination was Edwards. The decision to terminate Bartlett was affirmed and implemented by APC's Treasurer, Susan Sutherland ("Sutherland"). The reasons Sutherland gave Bartlett for her termination were that Sutherland was reorganizing the Accounts Receivable Department, Bartlett did not fit in, and she had caused problems within the department. APC never made any mention of Bartlett's age.[4] A temporary employee around age thirty assumed many of Bartlett's accounts within a few months of her termination.

## IV. Discussion

Plaintiff filed her complaint with this Court on February 23, 2005. In that complaint, she alleges five counts, including (a) wrongful termination; (b) age discrimination; (c) hostile work environment; (d) retaliation for whistle-blowing; and (e) defamation, libel and slander of character. The Court will analyze each claim in turn.

### A. Wrongful Termination

In Rhode Island, the general rule is that employees who are hired for an indefinite period with no contractual right to continued employment are at-will employees subject to discharge at

[4] At the time of Bartlett's termination she was age sixty-three, Edwards was one day short of her fifty-fourth birthday, and Sutherland was fifty-eight. The Accounts Receivable Department, at this time, consisted of nine employees, one of whom was under age forty, two of whom were over forty but not yet fifty, and six of whom were age fifty or over. Of the six employees over fifty, three were over sixty, including Bartlett. The other two employees over sixty were not terminated and, in fact, one of them received a promotion to supervisor of the restructured Accounts Receivable Department at about the same time as Bartlett's termination.

any time for any permissible reason or for no reason at all. DelSignore v. Providence Journal Co., 691 A.2d 1050, 1052 n.5 (R.I. 1997) (citing Volino v. General Dynamics, 539 A.2d 531, 532 (R.I. 1988)). The Rhode Island Supreme Court has consistently ruled that the tort of wrongful discharge of an at-will employee is not recognized in RI. See Volino, 539 A.2d at 532; Pacheo v. Raytheon Co., 623 A.2d 464, 465 (R.I. 1993). Plaintiff has not alleged a contractual right to employment; she was therefore an at-will employee, subject to dismissal by Defendant at any time. Because Plaintiff was an at-will employee, and Rhode Island does not recognize a cause of action for wrongful termination of an at-will employee, Plaintiff's claim on this count fails as a matter of law.

B. Age Discrimination

Plaintiff claims that she was terminated due to unlawful age discrimination. Under the Age Discrimination in Employment Act ("ADEA"), it is unlawful for an employer "to fail or refuse to hire or to discharge any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). "In an ADEA discrimination lawsuit, the plaintiff bears the ultimate burden of proving that his years were the determinative factor in his discharge, that is, that he would not have been fired but for his age." LeBlanc v. Great American Ins. Co., 6 F.3d 836, 842 (1st Cir. 1993) (internal quotation marks and citations omitted). When, as here, there is no overt evidence of age discrimination, the plaintiff's case is governed in the first instance by the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973). LeBlanc, 6 F.3d at 842; Mesnick v. General Elec. Co., 950 F.2d 816, 823 (1st Cir. 1991). "Once the plaintiff has established a prima facie case of age discrimination, the burden shifts to the employer to

articulate a legitimate, nondiscriminatory reason for its decision." Thomas v. Sears, Roebuck & Co., 144 F.3d 31, 33 (1st Cir. 1998). "The plaintiff must then show that the employer's proffered reason is a pretext for age discrimination." Id.

"The burden of making out a prima facie case is 'not onerous.'" Mesnick, 950 F.2d at 823 (quoting Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981)). The plaintiff establishes a prima facie case by showing that she (1) is at least forty years of age, (2) was qualified for the position, (3) experienced adverse employment action, and (4) was replaced by a person with roughly equivalent job qualifications. LeBlanc, 6 F.3d at 842; Mesnick, 950 F.2d at 823. "This showing gives rise to an inference that the employer discriminated due to the plaintiff's advanced years." Mesnick, 950 F.2d at 823.

Plaintiff has met her initial burden; she has made out a prima facie case for age discrimination. It is undisputed that Plaintiff was within the protected class. At the time of her termination Bartlett was sixty-three. Defendant does not challenge Bartlett's qualifications nor the fact that she was discharged. It is also uncontested that Plaintiff was eventually replaced by a woman approximately thirty years younger, who had already been performing a similar function for Defendant as a temporary employee.

The burden now shifts to the Defendant to articulate a legitimate, non-discriminatory reason for Plaintiff's termination. Thomas, 144 F.3d at 33; LeBlanc, 6 F.3d at 842. "This entails only a burden of production, not a burden of persuasion; the task of proving discrimination remains the claimant's at all times." Mesnick, 950 F.2d at 823 (citing Burdine, 450 U.S. at 253). The Court finds that the Defendant has also met its burden.

APC maintains, and the record reflects, that during Bartlett's exit interview she was told by APC's treasurer, Sutherland, that she was being terminated because Sutherland was reorganizing the accounts receivable department, Bartlett did not fit in, and that Bartlett had caused problems within the department. APC asserts that Plaintiff was not terminated because of her age but because of her conduct. In the months and weeks preceding Plaintiff's termination, Bartlett's co-workers made numerous reports to APC's management concerning her disruptive and threatening conduct. APC claims that it was this behavior, and the heightened tension within the department that it caused, that was the reason Plaintiff was terminated.

The explanations for Bartlett's discharge offered by APC satisfy Defendant's burden of production under the second prong of the McDonnell Douglas test. Defendant has presented, "through the introduction of admissible evidence, reasons for its actions which, *if believed by the trier of fact*, would support a finding that unlawful discrimination was not the cause of the employment action." LeBlanc, 6 F.3d at 845 (internal quotation marks and citations omitted). Given that the Defendant has articulated a legitimate, nondiscriminatory reason behind Plaintiff's discharge, the inference raised by the prima facie case dissolves. Mesnick, 950 F.2d at 823.

Under the McDonnell Douglas burden-shifting framework, the plaintiff now has the burden of showing that the employer's proffered reason is actually a pretext for age discrimination. Thomas, 144 F.3d at 33; LeBlanc, 6 F.3d at 842; Mesnick, 950 F.2d at 823. In the context of a Rule 56 motion, once the plaintiff's prima facie case is rebutted by the employer's legitimate, non-discriminatory reason, the McDonnell Douglas burden-shifting framework falls by the wayside. Mesnick, 950 F.2d at 824-25. At this juncture, "the ultimate

question becomes whether, on all the evidence of record, a rational factfinder could conclude that age was a determining factor in the employer's decision." Id. at 825.

"[A] plaintiff must offer some minimally sufficient evidence, direct or indirect, both of pretext and of the employer's discriminatory animus to prevail in the face of a properly drawn Rule 56 motion." Id. In other words, a plaintiff "must elucidate specific facts which would enable a jury to find that the reason given was not only a sham, but a sham intended to cover up the employer's real motive: age discrimination." Medina-Muñoz, 896 F.2d at 9. There is no evidence in the record that indicates that APC's reason for discharging Bartlett, i.e. her disruptive behavior following her performance review, was in any way a pretext for age discrimination.

On the contrary, the evidence in this case points away from age discrimination. APC hired Bartlett when she was age sixty-one. She was sixty-three when terminated. All but one of her entire department was over forty, most were over fifty, and three were sixty or over. Plaintiff was hired and fired by the same person, who herself was over fifty. Furthermore, the decision to terminate Plaintiff was affirmed and implemented by APC's Treasurer, Sutherland, who was almost sixty. No member of APC's management ever directly or indirectly mentioned the Plaintiff's age during their meetings with her. The record shows that the Defendant discharged Plaintiff because of her disruptive behavior and the resulting tension within her department. "Courts may not sit as super personnel departments, assessing the merits - or even the rationality - of employers' nondiscriminatory business decisions." Mesnick, 950 F.2d at 825 (citations omitted). Given the above, Plaintiff's claim of unlawful age discrimination must fail as a matter of law.

C. Hostile Work Environment

Plaintiff claims that she was subjected to a hostile work environment at APC. In support of her hostile work environment claim, Plaintiff alleges that the Accounts Receivable Department was dysfunctional and lacked supervision, that there was bickering among the female employees in the department, and that there was an incident of improper sexual conduct several months prior to her termination.[5] "Title VII of the Civil Rights Act of 1964 provides, in relevant part, that '[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" Crowley v. L.L. Bean, Inc., 303 F.3d 387, 394 (1st Cir. 2002) (quoting 42 U.S.C. § 2000e-2(a)(1)).

To prove a claim of hostile work environment, a plaintiff must establish that (1) she is a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based upon her membership in a protected class; (4) the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment; (5) the objectionable conduct was both objectively and subjectively offensive; and (6) some basis for employer liability has been established. See Rivera v. Puerto Rico Aqueduct & Sewers Auth., 331 F.3d 183, 189 (1st Cir. 2003); Crowley, 303 F.3d at 395. Among the many

---

[5] Although Plaintiff alleges numerous additional statements and incidents in support of her hostile work environment claim other than those discussed above, the Court finds the alleged incidents are either irrelevant, unsubstantiated, or without merit and, consequently, will not be considered.

flaws in Plaintiff's hostile work environment claim, the fatal one is her failure to articulate a protected class; that is, some evidence that Plaintiff was harassed *because of* her gender or one of the other Title VII protected categories. See Lee-Crespo v. Schering-Plough Del Caribe Inc., 354 F.3d 34, 44 n.5 (1st Cir. 2003) (citing Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998)). In fact, Plaintiff conceded that her claim was not because of her membership in any protected class, but rather her belief that Title VII entitled her to a "safe" working environment. (Pl. Depo. Vol. I, p. 133, l. 19 - p. 138, l. 7). For this reason alone, Plaintiff's claim must fail as a matter of law.

Nevertheless, addressing Plaintiff's specific allegations of harassment, the Court finds them to fall far short of the severe or pervasive standard necessary to support a hostile work environment claim. Plaintiff claims that her department was dysfunctional and that there was constant bickering among the female employees. However, as the First Circuit has observed, "[t]he workplace is not a cocoon, and those who labor in it are expected to have reasonably thick skins - thick enough, at least, to survive the ordinary slings and arrows that workers routinely encounter in a hard cold world." Suarez v. Pueblo Int'l, Inc., 229 F.3d 49, 54 (1st Cir. 2000). Additionally, "Title VII is neither a civility code nor a general anti-harassment code." Lee-Crespo, 354 F.3d at 37. Plaintiff fails to show that her work environment was anything other than that common to many a workplace in this country, and certainly not the abusive working environment contemplated by Title VII.

The single incident of improper sexual conduct that Plaintiff claims supports her argument of a hostile work environment, namely the incident involving a condom in the APC

lunchroom, was neither directed at her nor reported to APC's management until after several months had elapsed. Furthermore, once apprised of the situation, APC swiftly investigated the claim and took appropriate remedial action even though the conduct itself, while not appropriate for the workplace, hardly created a hostile and abusive working environment. In fact, Plaintiff herself conceded that she did not consider the incident to be sexual harassment. (Pl. Depo. Vol. I, p. 122, ll. 10-16). Accordingly, Plaintiff's claim of a hostile work environment must fail as a matter of law.

D. Retaliation Claim

Plaintiff claims that she was retaliated against for whistle-blowing. Specifically, Plaintiff claims she challenged her supervisor about the March 22, 2004, performance review and her supervisor's management style, and, as a result, Plaintiff was summoned to meet with the director of human resources. She also claims that in response to these challenges, her supervisor and co-workers conspired against her by making false reports to APC's management concerning her statements and behavior.

Generally, a claim of retaliation requires, at a minimum, "a showing that (1) the plaintiff engaged in a statutorily protected activity, and (2) his employer thereafter subjected him to an adverse employment action (3) as a reprisal for having engaged in protected activity." Claudio-Gotay v. Becton Dickinson Caribe, Ltd., 375 F.3d 99, 102 (1st Cir. 2004) (citing Blackie v. Maine, 75 F.3d 716, 722 (1st Cir. 1996)). Plaintiff has not produced any evidence to demonstrate that she engaged in any statutorily protected activity. Furthermore, Plaintiff provides no evidence, other than her own belief and speculation, that any of the alleged acts were in

retaliation for any protected conduct. See Mesnick, 950 F.2d at 828 (summary judgment for defendant on retaliation claim appropriate where plaintiff "tendered nothing, direct or circumstantial, suggesting a retaliatory animus"). As such, Plaintiff's claim must fail as a matter of law.

E. Plaintiff's Defamation Claim

Plaintiff claims that APC made approximately eight statements that constitute defamation.[6] In RI, "[w]hen bringing a defamation action a plaintiff has the burden of proving that the defendant has communicated a 'false and defamatory' statement about the plaintiff." Cullen v. Auclair, 809 A.2d 1107, 1109-10 (R.I. 2002) (quoting Beattie v. Fleet Nat'l Bank, 746 A.2d 717, 721 (R.I. 2000)). "A defamatory statement consists of '[a]ny words, if false and malicious, imputing conduct which injuriously affects a [person's] reputation, or which tends to degrade him [or her] in society or bring him [or her] into public hatred or contempt.'" Wilkinson v. State Crime Lab. Comm'n, 788 A.2d 1129, 1142 (R.I. 2002) (quoting Swerdlick v. Koch, 721 A.2d 849, 860 (R.I. 1998)). "To succeed in an action for defamation, the plaintiff must prove: (1) the utterance of a false and defamatory statement concerning another; (2) an unprivileged communication to a third party; (3) fault amounting to at least negligence; and (4) damages."

---

[6] Two of Plaintiff's allegations in support of her defamation claim merit little discussion. This includes Defendant's search of her purse for a handgun after it was reported by a co-worker that Plaintiff was heard stating that she carried a pistol and, secondly, Plaintiff's belief that APC made it known to her co-workers that she was not an employee in good standing and was terminated. The first concerns conduct of the Defendant that Plaintiff acknowledged was the proper response of an employer. (Pl. Depo. Vol. II, p. 50, ll. 14-20; p. 53, ll. 2-9.). The second alleged defamatory statement is based on rumor and Plaintiff's speculation, and Plaintiff has produced no evidence to support her claim.

Mills v. C.H.I.L.D., Inc., 837 A.2d 714, 720 (citing Budget Termite & Pest Control, Inc. v. Bousquet, 811 A.2d 1169, 1172 (R.I. 2002)).

The first defamatory statement alleged by the Plaintiff is based on Gough's statement to Plaintiff that a co-worker had reported to Human Resources that Plaintiff carried a handgun to work. Plaintiff also claims that the statement by Sutherland, during Plaintiff's exit interview, that Plaintiff had caused problems within the department, was defamatory. Both of these statements fail to support a claim for defamation. Both statements were made directly to Plaintiff, and not to a third party as required. Id.

Plaintiff alleges that various statements made by APC to the Equal Employment Opportunity Commission ("EEOC"), and in APC's answers to Plaintiff's interrogatories are defamatory. These statements concern the comments and actions of Plaintiff *reported to* APC by Plaintiff's co-workers. Communications made in judicial proceedings are absolutely privileged. See Vieira v. Meredith, 123 A.2d 743, 744 (R.I. 1956). Defendant was required to disclose to the EEOC and Plaintiff the reasons underlying its decision to terminate Plaintiff. Among those reasons were that certain employees had reported to APC that they were concerned about statements and actions attributed to Plaintiff. Accordingly, these statements are privileged and can not form the basis for a successful defamation claim by Plaintiff.

Plaintiff also asserts that APC defamed her by reporting to the Rhode Island Department of Labor and Training ("DLT") that Plaintiff had been terminated for poor performance. APC, however, was required to submit a report to DLT with a short explanation of the reason for an employee's separation. A person may escape liability for a false and defamatory statement "if

the occasion for the publication is such that the publisher acting in good faith correctly or reasonably believes that he has a legal, moral or social duty to speak out, or that to speak out is necessary to protect either his own interests, or those of third person, or certain interests of the public." Ponticelli v. Mine Safety Appliance Co., 247 A.2d 303, 305-06 (R.I. 1968). In order to overcome this qualified privilege, a plaintiff "must show that the primary motivating force for the communication was the publisher's ill will or spite toward him." Id. at 308. Plaintiff has offered no evidence that Defendant acted for any reason other than that it believed it had a legal duty to report its reasons for terminating Plaintiff. As a matter of law, Plaintiff's allegations of defamation can not succeed.

V. Conclusion

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is DENIED and Defendant's Motion for Summary Judgment is GRANTED.

SO ORDERED.

Mary M. Lisi

Mary M. Lisi
United States District Judge
September 20, 2006